## C. THOMAS STORES SALES SYSTEM, INC. v. GEORGE SPAETH AND OTHERS.[1]

March 14, 1941.

No. 32,550.

[1]Reported in 297 N. W. 9.

*J. A. A. Burnquist,* Attorney General, and *Matthias N. Orfield* and *George W. Markham,* Special Attorneys, for appellants.

*R. H. Fryberger,* for respondent.

PETERSON, JUSTICE.

Plaintiff sues to have Ex. Sess. L. 1937, c. 93 (3 Mason Minn. St. 1940 Supp. §§ 5887-18a to 5887-18t), declared unconstitutional and to enjoin the state officials charged with the duty from enforcing it.

Plaintiff is a chain store operator owning 45 stores within the state and is engaged in the business of selling at retail only food products produced, manufactured, and prepared by others. It sells no food products of its own production. Some of its chain store competitors sell food products not only of their own but also of the manufacture and production by others.

The statute is entitled: "An act imposing and relating to a tax on the conducting of business by the system of mail order establishments and by the system of chain stores, and repealing Laws 1933, Chapter 213, as amended by Extra Session Laws 1933-1934, Chapter 16."

It is divided into three parts.

Part I imposes a tax on chain stores which is graduated from $10 on the first and second stores and increases progressively to $350 on each store from the 151st and over.

A system of chain stores is defined as conducting a business from two or more stores under a single or common ownership, supervision, management, or control. Two or more stores are deemed to be under a single or common ownership, supervision, management, or control if they are directly or indirectly owned or controlled by a single person or group of persons having a common interest therein or if 20 per cent or more of the gross revenues, net revenues, or profits from such stores shall be required to be made available for the beneficial use or shall inure to the

benefit, of any person or group of persons having a common interest therein.

Excepted from the tax are certain specified retailers and "any person who within this state produces, manufactures, prepares, distributes and sells at retail only, food products which he himself produces, manufactures or prepares, where such retail sales are made only from stores owned, operated and controlled exclusively by any such person." (Part I, § 1.)

Part II imposes a tax on mail order establishments as therein defined which it divides into 11 classes. The tax is a graduated one beginning with $200 on the first store, $300 on the second store, and increasing progressively to $1,100 on the tenth store and $1,200 on each store thereafter. A "mail order establishment" is defined to mean "any place or places, order offices, warehouses and reserve depots in which are stored or kept or orders taken for goods, wares, and merchandise, owned or controlled directly or indirectly by a person engaged in selling same at retail within this state" "at least fifteen per cent (15%) of whose total intrastate sales therefrom are filled and completed in response to orders from purchasers for such goods received by or through the mails, express, messenger or written communication, and which person issues and distributes price lists, circular advertisements, pamphlets or catalogs to prospective purchasers or customers."

There are some exceptions from this tax.

The third part, which is entitled "General Provisions," contains the enforcement provisions. Section 8 thereof contains a clause which in effect repeals the earlier chain store tax law by providing that "No taxes shall be levied or assessed under Laws 1933, Chapter 213, for the year 1937 or thereafter, but said law shall remain in full force and effect with respect to any tax levied or assessed or which should have been levied or assessed thereunder for any year prior to 1937." It provides also that any taxes for the year 1937 paid under the 1933 law shall be credited upon any tax for said year due under chapter 93.

A mail order establishment is not subject to the chain store tax.

The act is assailed as unconstitutional upon the grounds: (1) That it violates art. 4, § 27, of the constitution, which provides that "no law shall embrace more than one subject, which shall be expressed in its title," by (a) embracing not one but two subjects, *viz.*, chain stores and mail order establishments, and (b) failing to express the subject of the act in the title by not stating therein that the act contains the saving clause found in § 8 of the General Provisions, which keeps the 1933 act operative so as to permit the collection of taxes assessed thereunder prior to 1937 and which provides that credit upon a tax due under chapter 93 should be given for any taxes imposed by the 1933 law which were paid during 1937; and (2) that the act makes arbitrary, unreasonable, unequal, and discriminatory classifications by which plaintiff is denied the equal protection of the law in violation of Const. art. 1, § 2, which forbids class legislation, and art. 4, §§ 33 and 34, which prohibits special legislation, and by which it is subjected to unequal taxation in violation of art. 9, § 1, which requires uniformity of taxation upon the same class of subjects by (a) exempting from the tax retail dealers who distribute food products of their own manufacture and production, (b) including as chain stores subject to the tax any two or more stores, 20 per cent or more of the revenue from each of which goes to one person or group of persons having a common interest therein, and (c) not imposing chain store taxes upon mail order establishments.

The court below found that chapter 93 is unconstitutional, but did not grant an injunction. Judgment was entered accordingly. The appeal is from the judgment.

■ The attack on the act that it contains plurality of subject in violation of Const. art. 4, § 27, is confined to the proposition that it provides for two separate taxes, *viz.*, one on chain stores and another on mail order establishments. No claim is made on that score that the provision for the repeal of the 1933 law is a separate subject, and hence we pass that question.

The subject of a statute is the matter to which it relates and with which it deals. A subject embraces all provisions which are germane to it; they may be parts of it, incident to it, or means auxiliary to the end in view. The subject must be single; the provisions by which the object is accomplished may be multifarious. The constitutional provision ought to be practically and liberally construed. In Johnson v. Harrison, 47 Minn. 575, 50 N. W. 923, 924, 28 A. S. R. 382, we said:

"All that is necessary is that the act should embrace some one general subject; and by this is meant, merely, that all matters treated of should fall under some one general idea, be so connected with or related to each other, either logically or in popular understanding, as to be parts of, or germane to, one general subject." Our cases are collected in 6 Dunnell, Minn. Dig. (2 ed. & Supps.) § 8910.

The separate taxes on chain stores and mail order establishments are germane to the general subject of taxation of which they are but parts. Taxation is the subject of a statute imposing taxes upon different things. Apartment Operators Assn. v. City of Minneapolis, 191 Minn. 365, 254 N. W. 443 (homesteads and other kinds of property); Lane Drug Stores, Inc. v. Lee (D. C.) 11 F. Supp. 672 (separate taxes on chain stores, a graduated tax according to number of stores and a gross income tax, the latter being held unconstitutional on other grounds); Gibson County v. Pullman So. Car Co. (C. C.) 42 F. 572 (separate taxes on sleeping cars and the property of telegraph companies); Cannon v. Mathes, 8 Heisk. (Tenn.) 504 (a tax on property and a tax on privileges).

The Gibson County case was decided under the constitution of Tennessee, which is substantially the same as ours in this respect. The court said of the statute: "Its purpose is to tax two different things, but the subject-matter of consideration by the legislators was that of taxation expressed in the title."

The uniform legislative practice in this state has been in accord with the rules thus well settled judicially.[2] The constitutional validity of the legislative practice has not been questioned prior to the instant case, although occasion to raise the question was presented in State ex rel. St. Paul City Ry. Co. v. Minnesota Tax Comm. 128 Minn. 384, 150 N. W. 1087, where L. 1913, c. 483, taxing such diverse things as iron ore, livestock, agricultural products, personalty, household goods, furniture, fixtures, merchandise, manufactured goods, platted and unplatted land, and all other property not specifically enumerated was attacked as lacking uniformity, but not upon the ground of multiplicity of subject matter. We held the statute constitutional. The uniform legislative practice, while not binding on us, is entitled to great weight in construing the constitution. 1 Dunnell, Minn. Dig. (2 ed. & Supps.) § 1579.

In a more restricted sense the subject matter of chapter 93 is the taxation of merchandisers operating by the multiple store system. In that view, the whole subject is embraced in the term "chain stores." By their entrance into the chain store field, mail order establishments have taken on so many of the features and characteristics of the former that they are associated with chain stores in the public mind. The literature of the day dealing with the problems of merchandising and taxation in relation to the two kinds of business furnishes abundant evidence of that fact.[3] That

[2]For example: Taxes were levied on "all the taxable property" in the state by every legislature from 1858 to 1939. L. 1858, c. 6; L. 1868, c. 28; L. 1878, c. 69; L. 1889, c. 183; L. 1899, c. 273; L. 1909, c. 477; L. 1919, c. 509; L. 1929, c. 411; L. 1939, c. 375. Some laws have taxed two or more things, such as L. 1911, c. 285, imposing a tax on money and credits; L. 1933, c. 405, levying an income tax on individuals and a franchise tax on corporations; and Ex. Sess. L. 1937, c. 9, levying gross earnings taxes on express companies of 9 per cent, on freight line companies of 7 per cent, on sleeping car companies of 6 per cent, and on trust companies of 6 per cent.

[3]Iowa Studies in Business, pp. 5 and 61.

Chain Stores, Senate Doc. (72d Cong. 1st Sess.) No. 31, pp. 11, 13, 14.

Chain Stores, Senate Doc. (72d Cong. 1st Sess.) No. 100, pp. 3, 8, 26, 39, 50, 77.

chain stores and mail order houses bear such a relationship and connection as parts of one subject in the popular mind satisfies the constitutional requirements of unity of subject matter. See Johnson v. Harrison, 47 Minn. 575, 50 N. W. 923, 28 A. S. R. 382, *supra*. If the statement in the title that the act is one to tax chain stores were held to express the subject, the reference therein to mail order establishments might be rejected as surplusage. Gibson v. State, 214 Ala. 38, 106 So. 231; 25 R. C. L. p. 863, § 107.

Hall, Mail Order and Direct-mail Selling, p. 2.

5 Encyc. Britannica (14 ed.) (Copyrighted 1939, 1930) p. 190—"In addition to this development (that is of chain store units in smaller towns) it now appears that the mail order houses will soon become important chain store factors.

"Sears, Roebuck and company has begun to establish a chain of department stores, most of which, at the beginning of 1928, were located in large cities, but Montgomery Ward and company has announced a plan of setting up 1,500 retail stores mainly in medium and small-size towns." For some reason not clear to us, the latter statement is omitted from the later editions.

Bloomfield, Chain Stores, p. 38: "I mean by 'chain store organization' any group of retail outlets centrally owned and managed. Whether the group be engaged solely in retailing, or be operated by a manufacturer, wholesaler or mail-order house does not matter."

Barker and Anderson, Principles of Retailing, p. 23—"Such retail store business (of mail order houses) was classified under the heading of national chains.

"Mail-order houses have the advantage of quantity buying. The buying advantage is one held in common with other forms of large scale retailing.

"The outstanding development in the mail-order field during recent years has been the entrance of the larger mail-order houses into the chain store and department store fields. Conditions having been unfavorable to mail-order growth, these houses have been establishing retail stores."

11 Fortune (Jan. 1935) 69—"We have described Montgomery Ward as a mail-order house, for it has been sending out catalogues to families since 1872 and its name is a synonym for mail-order activities. But as Mr. Avery (pres. and chm. board of Montgomery Ward and Company) and all the world knew in 1931, it had recently embraced a new creed and was operating a chain of department stores."

The subject of the act is expressed in the title. True, the title does not in terms say that it is "taxation." But it does say that it is an act imposing and relating to a tax on chain stores and mail order establishments. The subject may be expressed generally or by a description of its parts or subdivisions. The general subject need not be stated in the title if it is clearly disclosed or can be readily inferred from the details expressed. 1 Lewis' Sutherland, Statutory Construction (2 ed.) § 134. In a large number of cases we spelled out the general subject from details expressed in the title. Moses v. Olson, 192 Minn. 173, 255 N. W. 617; Blaisdell v. Home Bldg. & Loan Assn. 189 Minn. 422, 249 N. W. 334, 86 A. L. R. 1507, affirmed, 290 U. S. 398, 54 S. Ct. 231, 78 L. ed. 413, 88 A. L. R. 1481; Lyman v. Chase, 178 Minn. 244, 226 N. W. 633, 842. In Gibson County v. Pullman So. Car Co. (C. C.) 42 F. 572, 574, *supra,* it was held that the subject of taxation was expressed in a title which read, "An act declaring the mode and manner of valuing the property of telegraph companies for taxation, and of taxing sleeping-cars." It is equally clear here that the subject of taxation is expressed in the title showing that the act is one to tax chain stores and mail order establishments.

■ The saving clause simply limits the scope of the repeal. A title for an unqualified repeal comprehends a qualified one as the greater includes the less. The title may be broader than the act itself. State ex rel. Young v. Standard Oil Co. 111 Minn. 85, 126 N. W. 527. A saving clause is but an incident of repeal of which everyone must be deemed to be apprised by its very nature. A title which recites that the act contains a repeal need not refer to a germane saving clause. Commonwealth ex rel. v. Cooper, 277 Pa. 554, 121 A. 502. Likewise, provisos and exceptions appearing in the body without previous mention in the title have been sustained. Woodson v. Murdock, 89 U. S. (22 Wall.) 351, 22 L. ed. 716; Pottorff v. El Paso-Hudspeth Counties Road District, etc. (5 Cir.) 62 F. (2d) 498. In 25 R. C. L. p. 857, § 102, it is said: "Indeed, every title admits of exceptions in the body of the act unless it is so framed as specifically and positively to forbid them,"

citing State v. Schlitz Brg. Co. 104 Tenn. 715, 59 S. W. 1033, 78 A. S. R. 941.

Saving the taxes levied and assessed under the 1933 law and allowing a credit on the taxes imposed by c. 93 for taxes for the year 1937 paid under the 1933 law was germane to the repeal of the latter by the former.

■ Plaintiff contends that the exception of "any person who within this state produces, manufactures, prepares, distributes and sells at retail only, food products which. he himself produces, manufactures or prepares, where such retail sales are made only from stores owned, operated and controlled exclusively by any such person," includes one who sells the products of others as well as his own. Defendants contend that it includes only one selling at retail his own products exclusively.

Clauses creating exemptions from taxation are strictly construed so as to allow exemption only to those who come strictly within their terms. The construction invoked by defendants accords with the strict terms of the exception. That of the plaintiff includes not only those who deal in their own products, which is the literal meaning of the language, but those who deal in the products of others as well. This is not in accord with the rule of strict construction. The rule of exemption of manufacturing corporations from taxation is thus stated:

"A corporation may sell the goods which it manufactures, at retail, without ceasing to be a manufacturing corporation, but if it sells the wares of other makers of the same general character in order to complete its lines of stock and meet the demands of its customers, it is taxable." 26 R. C. L. p. 330, § 288.

The basis for such a construction of an exemption of manufacturers is that it is granted to those engaged in the business of manufacturing, but not to those engaged in manufacturing *and* some other line. Such an exception is exclusive in its nature. That construction finds abundant support in our cases construing Const. art. 10, § 3, as it was prior to the 1930 amendment, and

statutes enacted pursuant thereto, which excepted from stockhold-
ers' liability the stockholders of any corporation "organized for
the purpose of carrying on any kind of manufacturing or mechan-
ical business." The rule was that a corporation came within the
exception only if it was authorized by its articles of incorporation
to engage in a manufacturing or mechanical business exclusively,
but not if it was authorized to engage in some other line of busi-
ness in addition. Merchants Nat. Bank v. Minnesota Thresher
Mfg. Co. 90 Minn. 144, 95 N. W. 767; State v. Minnesota Thresher
Mfg. Co. 40 Minn. 213, 41 N. W. 1020, 3 L. R. A. 510.

The exception should be construed as meaning that only re-
tailers dealing exclusively in products which they themselves have
produced or prepared are exempt from the tax. It does not apply
to those who deal in the products of others as well as their own.

■ The standards of equal protection under Minn. Const. art. 1,
§ 2, and art. 4, §§ 33 and 34, and of uniformity of taxation under
art. 9, § 1, are the same as the standard of equality required by
the equal protection clause of U. S. Const. Amend. XIV. National
Tea Co. v. State, 205 Minn. 443, 286 N. W. 360; State v. Bridgeman
& Russell Co. 117 Minn. 186, 134 N. W. 496, Ann. Cas. 1913D, 41.

■ The claim of denial of equal protection rests upon the argu-
ment that the exception from the tax of retailers selling products
of their own manufacture, production, and preparation discrimi-
nates in favor of manufacturers and producers against chain stores,
food against other products, and retailers against wholesalers.

Equal protection does not require any iron rule of equality of
taxation. The distribution of the tax burden in such manner as
seems equitable is recognized as a proper exercise of the power of
taxation. The selection of subjects of taxation and exemption is
inherent in that power. The process of selection involves classifi-
cation with resulting diversity in the subjects selected for taxation
and exemption as well as in the amount of the tax. Reed v.
Bjornson, 191 Minn. 254, 253 N. W. 102. Classification must not
be arbitrary. By that is meant that distinction must rest upon
some difference having a fair and substantial relation to the object

of the legislation so that all persons similarly circumstanced shall be treated alike. Ohio Oil Co. v. Conway, 281 U. S. 146, 50 S. Ct. 310, 74 L. ed. 775. Where the classification rests upon some reasonable difference there is no denial of equal protection of the law. State Board of Tax Commrs. v. Jackson, 283 U. S. 527, 51 S. Ct. 540, 75 L. ed. 1248, 73 A. L. R. 1464, 75 A. L. R. 1536 (Indiana Chain Store Tax Case). "Inequalities which result from a singling out of one particular class for taxation or exemption, infringe no constitutional limitation." Carmichael v. Southern Coal & Coke Co. 301 U. S. 495, 57 S. Ct. 868, 872, 81 L. ed. 1245, 109 A. L. R. 1327.

(a) There are such substantial differences between chain stores and those excepted from the tax as to justify a distinction between them with respect to the tax. The distinction rests upon the broad difference between the chain store system of merchandising and the selling by manufacturers and producers of their own products. In the chain store tax cases the Supreme Court of the United States pointed out that chain stores are a distinct business species characterized by mass capital, mass buying, mass appeal in attracting customers. Great A. & P. Tea Co. v. Grosjean, 301 U. S. 412, 57 S. Ct. 772, 81 L. ed. 1193, 112 A. L. R. 293; Fox v. Standard Oil Co. 294 U. S. 87, 55 S. Ct. 333, 79 L. ed. 780; Louis K. Liggett Co. v. Lee, 288 U. S. 517, 53 S. Ct. 481, 77 L. ed. 929, 85 A. L. R. 699; State Board of Tax Commrs. v. Jackson, 283 U. S. 527, 51 S. Ct. 540, 75 L. ed. 1248, 73 A. L. R. 1464, 75 A. L. R. 1536. Because of the advantages enjoyed by the chains over independent merchants as a result of such differences, the court held that the exaction of a tax based on proper and reasonable discrimination might be employed as the implement for adjusting the economic and competitive inequalities between chain stores and independent merchants.

The difference between the selling of the products of others by chain stores and the selling of their own products by manufacturers or producers affords a sufficient basis for the distinction. In Great A. & P. Tea Co. v. Grosjean, 301 U. S. 412, 57 S. Ct. 772,

81 L. ed. 1193, 112 A. L. R. 293, *supra,* the importance of mass buying by chain stores was illustrated. Chains not only underbuy their competitors, but obtain enormous rebates on purchases as well. In that case the chain store's rebates on merchandise purchased amounted to $530 per store per year. The evidence here is that the excepted class consists principally of bakers and confectioners who sell their own products in their own stores. Manufacturers and producers selling their own products exclusively do not enjoy the advantages and benefits which accrue to chain stores by the purchase of merchandise which they sell. That is an important and substantial difference.

The difference between chain stores and other lines of business was held sufficient to justify the exemption of filling stations from the Florida chain store tax. Louis K. Liggett Co. v. Lee, 288 U. S. 517, 53 S. Ct. 481, 77 L. ed. 929, 85 A. L. R. 699.

There is a difference between manufacturing and production on the one hand and other lines of business on the other. Manufacturing and production may be exempted from a particular tax, Pullman Car & Mfg. Corp. v. Hamilton, 229 Ala. 184, 155 So. 616; Commonwealth v. Germania Brg. Co. 145 Pa. 83, 22 A. 240; Duke Power Co. v. Bell, 156 S. C. 299, 152 S. E. 865, and may be the subject of special classification. State ex rel. St. Paul City Ry. Co. v. Minnesota Tax Comm. 128 Minn. 384, 150 N. W. 1087.

The sale of his products by the manufacturer or producer is an incident of his business. Nicollet Nat. Bank v. Frisk-Turner Co. 71 Minn. 413, 74 N. W. 160, 70 A. S. R. 334; Annotation, 64 L. R. A. 55.

In Armour & Co. v. Virginia, 246 U. S. 1, 38 S. Ct. 267, 62 L. ed. 547, an exemption of manufacturers selling their products at the place of manufacture from a tax on merchants based on the amount of goods purchased during the license period was held to be constitutional. We do not regard the place of sale as controlling. A sale in a store as an incident of manufacturing is not different in principle from a sale at the factory as an incident of the same

business. The exception here is not distinguishable in principle from that sustained in the cited case.

Likewise, similar exceptions and exemptions from specific taxes have been sustained, such as the exemption of sales by producers of their products in their original and unmanufactured state from a sales tax, Leonard v. Maxwell, 216 N. C. 89, 3 S. E. (2d) 316; exemption of farmers and growers grinding their own sugar and molasses from materials grown by them from a tax on manufacturers engaged in the business of grinding sugar and molasses from materials grown by others, American Sugar Rfg. Co. v. Louisiana, 179 U. S. 89, 21 S. Ct. 43, 45 L. ed. 102; and "the transportation of livestock and farm products to market by the owner thereof or supplies for his own use in his own motor vehicle" from a tax upon commercial haulers and truckers under a state motor carrier law the purpose of which was to defray the expense of highway construction, maintenance, and administration. Continental Baking Co. v. Woodring, 286 U. S. 352, 52 S. Ct. 595, 596, 76 L. ed. 1155, 81 A. L. R. 1402.

That the business of retail selling by manufacturers and producers who are excepted from the tax is conducted by a system of multiple stores does not compel their classification as chain stores. On the one hand, such a system has the form perhaps of a chain organization. On the other, it is a mere incident of the business of manufacturing and production and does not possess the characteristics of the chain store system, at which chain store tax legislation is aimed. Reasonable men might differ as to where the line of classification should be drawn, but that is not sufficient ground for upsetting the classification. The line must be drawn somewhere, Carmichael v. Southern Coal & Coke Co. 301 U. S. 495, 57 S. Ct. 868, 81 L. ed. 1245, 109 A. L. R. 1327, *supra*. It is for the legislature to say where the line shall be drawn, for "within the field where men of reason may reasonably differ, the legislature must have its way." Williams v. Baltimore, 289 U. S. 36, 53 S. Ct. 431, 433, 77 L. ed. 1015.

(b)   The distinction between sales at retail and wholesale affords a sufficient basis for a distinction with respect to the imposition of or exemption from a tax.   Louis K. Liggett Co. v. Lee, 288 U. S. 517, at p. 537, 53 S. Ct. 481, 77 L. ed. 929, 85 A. L. R. 699; Cook v. Marshall County, 196 U. S. 261, 25 S. Ct. 233, 49 L. ed. 471; State ex rel. Hickey v. Levitan, 190 Wis. 646, 210 N. W. 111, 48 A. L. R. 434; Commonwealth v. Clark, 195 Pa. 634, 46 A. 286, 86 A. S. R. 694, 57 L. R. A. 348, affirmed, Clark v. Titusville, 184 U. S. 329, 22 S. Ct. 382, 46 L. ed. 569; Singer Mfg. Co. v. Wright (C. C.) 33 F. 121, appeal dismissed, 141 U. S. 696, 12 S. Ct. 103, 35 L. ed. 906.

(c)   Exemption of manufacturers and producers of food from a specific tax is permissible.   Morrow v. Henneford, 182 Wash. 625, 47 P. (2d) 1016; Leonard v. Maxwell, 216 N. C. 89, 3 S. E. (2d) 316.

Plaintiff contends that under State v. Pehrson, 205 Minn. 573, 287 N. W. 313, and Colgate v. Harvey, 296 U. S. 404, 56 S. Ct. 252, 80 L. ed. 299, 102 A. L. R. 54, the classification here involved is invalid.   The Pehrson case involved a police regulation licensing peddlers.   The selection of subjects for taxation and exemption involves different considerations than the selection and exemption of subjects of a police regulation.   The case is not in point.   We directed attention to the fact that the power of classification with respect to taxation is broader and its exercise more flexible than for other legislative purposes in Reed v. Bjornson, 191 Minn. 254, 253 N. W. 102, *supra*, at p. 263.   Colgate v. Harvey, 296 U. S. 404, 56 S. Ct. 252, 80 L. ed. 299, 102 A. L. R. 54, is no longer authority because it was expressly overruled in Madden v. Kentucky, 309 U. S. 83 (p. 93), 60 S. Ct. 406, 408, 84 L. ed. 509, 125 A. L. R. 1383, in which the court said:

"The broad discretion as to classification possessed by a legislature in the field of taxation has long been recognized.   This Court fifty years ago concluded that 'the Fourteenth Amendment was not intended to compel the State to adopt an iron rule of equal taxation,' and the passage of time has only served to underscore the

wisdom of that recognition of the large area of discretion which is needed by a legislature in formulating sound tax policies. Traditionally classification has been a device for fitting tax programs to local needs and usages in order to achieve an equitable distribution of the tax burden. It has, because of this, been pointed out that in taxation, even more than in other fields, legislatures possess the greatest freedom in classification."

The classification does not deny plaintiff the equal protection of the law.

■ Plaintiff does not have any interest entitling it to complain that the inclusion of stores or mercantile establishments of which 20 per cent or more of the gross revenues, net revenues, or profits are required directly or indirectly to be made available for the beneficial use or to inure to the immediate or ultimate benefit of any person or group of persons having a common interest therein is discriminatory as against those who thus are made subject to the tax. Section 10 of the General Provisions provides that each and every part and provision of the act shall be severable. If the section complained of were invalidated, the act would still be complete and workable. Mesaba Loan Co. v. Sher, 203 Minn. 589, 282 N. W. 823. Plaintiff is not taxed in virtue of such provision and is not affected by it one way or the other. The imposition of the tax upon others simply cannot prejudice it.

One who is not discriminated against by a legislative classification does not have an interest entitling him to raise the question of the unconstitutionality of a statute on the ground that it denies equal rights and privileges by discriminating between persons and classes generally or between classes of which he is not a member. In State v. Hoffman, 159 Minn. 401, 199 N. W. 175, we held that the defendant, who was a resident, was not entitled to raise the question that a town ordinance under which he was convicted of illegally operating a dance hall was unconstitutional upon the ground that it discriminated against nonresidents because the discrimination, if any, did not injure him.

In Carmichael v. Southern Coal & Coke Co. 301 U. S. 495, 57 S. Ct. 868, 81 L. ed. 1245, 109 A. L. R. 1327, it was similarly held that employers required by a state unemployment compensation act to contribute to the state unemployment compensation fund could not for lack of interest raise the question of the validity of separable provisions levying a tax on their employes for the benefit of the fund.

■ The classification under which mail order establishments are taxed exclusively as such without being taxed also as chain stores does not discriminate in favor of mail order houses against chain stores.

Classification may be based on the manner of conducting business. Business conducted in one manner may be taxed in a different way and at a different rate from business conducted in a different manner. 26 R. C. L. p. 258, § 228; Great A. & P. Tea Co. v. Grosjean, 301 U. S. 412, 57 S. Ct. 772, 81 L. ed. 1193, 112 A. L. R. 293; Fox v. Standard Oil Co. 294 U. S. 87, 55 S. Ct. 333, 79 L. ed. 780; Louis K. Liggett Co. v. Lee, 288 U. S. 517, 53 S. Ct. 481, 77 L. ed. 929, 85 A. L. R. 699; Commonwealth v. Clark, 195 Pa. 634, 46 A. 286, 86 A. S. R. 694, 57 L. R. A. 348, and other authorities cited in subdivision five hereof, *supra*.

There is factual basis for a distinction between mail order establishments and chain stores. Similarity lies in the fact that both are composed of multiple units. There is characteristic difference in that mail order houses as a rule possess greater capital and are larger in size. They derive from these factors alone, as we have pointed out, distinct advantages over their competitors in the merchandising business. Chain stores, as a rule, confine their operations to a single line of merchandise, and such lines as are closely allied therewith in much the same way as the independent store dealing in food (*i. e.*, the plaintiff), drugs, hardware, clothes, and other single lines. The mail order house carries practically all lines. A chain of mail order establishments constitutes a chain

of department stores.[4] It is not only a chain but a combination of chains under single ownership and control.

Then there is a difference in the manner of obtaining customers. The chain reaches its customers by its presence in their neighborhood, by a conspicuous store and advertising. In addition to such methods, the mail order house contacts hundreds of thousands of people by mailing them printed catalogues and other literature.[5] By means of such contact, customers are attracted not only to buy by mail but over the counter in their stores as well.[6]

We fail to see any basis at all for the claim that the classification is not a proper one.

Our conclusion is that the act is valid as against all the objections which have been properly raised. Hence there must be a reversal.

Reversed.

---

[4]See Senate Doc. (72d Cong. 1st Sess.) No. 100, p. 50.

[5]Nelson v. Sears, Roebuck & Co. 312 U. S. 359, 61 S. Ct. 586, 85 L. ed. —, decided February 17, 1941; Nelson v. Montgomery Ward & Co. 312 U. S. 373, 61 S. Ct. 593, 85 L. ed. —, decided February 17, 1941.

[6]Hall, Samuel Roland, Mail-order and Direct-mail Selling, p. 2, points out that solicitations by mail may result in purchases by mail or in a retail store.