# T. J. ARNESON v. W. H. BARBER COMPANY.
# STATE, INTERVENER.[1]

March 28, 1941.

Nos. 32,718, 32,797.

[1]Reported in 297 N. W. 335.

*J. A. A. Burnquist,* Attorney General, *P. F. Sherman,* Assistant Attorney General, and *Faner C. Wonderly,* Special Assistant Attorney General, for the State.

*Joseph J. Granbeck* and *Lyle Pettijohn,* for plaintiff-appellant.

*G. A. Youngquist* and *Fowler, Youngquist, Furber, Taney & Johnson,* for respondent.

*Roy D. Modeen, amicus curiae,* filed a brief in support of the contention of plaintiff.

JULIUS J. OLSON, JUSTICE.

Two cases are here for review (Nos. 32,718 and 32,797). Since the solution of the problems involved in the one is determinative of the other, only one opinion need be written.

Plaintiff as a taxpayer brought this suit for an accounting of moneys collected by defendant for gasoline excise taxes from retailers to whom it had sold gasoline, and for judgment on behalf of the state for the amount found to be due. Defendant's demurrer was sustained. Thereupon the state took over the laboring oar by filing its complaint in intervention seeking for the same reasons the relief sought by plaintiff. Defendant's general demurrer thereto was also sustained. Plaintiff and the state appeal.

Defendant is a distributor of gasoline. As such it has been charged with and has paid the tax required by L. 1925, c. 297, § 3, as amended (3 Mason Minn. St. 1940 Supp. § 2720-72). Under that section the whole tax is computed upon a basis of 97 per cent of the gross gallonage, since "a deduction of three per cent of the quantity of gasoline inspected shall be allowed for evaporation and loss."

The tax is an excise levied and collected pursuant to Minn. Const. art. 9, § 5, and is "in lieu of all other taxes imposed upon the business of selling or dealing in gasoline." L. 1925, c. 297,

§ 13 (1 Mason Minn. St. 1927, § 2720-82). It is imposed on gasoline used on our public highways (3 Mason Minn. St. 1940 Supp. §§ 2720-70 to 2720-92a), and is a direct charge against the distributor, who, however, is deemed to have paid such tax "for and on behalf of the person using such gasoline in motor vehicles in this state." But the distributor is "authorized" to collect from his vendee the tax so paid. L. 1925, c. 297, § 9 (1 Mason Minn. St. 1927, § 2720-78).

Defendant's payment in full of the tax as defined by the statute is conceded. But the claim is that the three per cent gallonage allowance for "evaporation and loss" as fixed by statute is much greater than the actual evaporation and loss; hence that defendant thereby has exacted and collected from its vendees an amount in excess of the tax as measured by the statutory standard. It is claimed that this excess is tax money due the state. Inasmuch as the defendant best knows what the facts are in respect to this difference, plaintiff and the state seek by these suits to compel an accounting, and the payment to the state of any sum having so unjustly inured to defendant's advantage.

Defendant takes the view that since the statute is plain it must be applied as it reads; moreover, that it has been thus uniformly construed and applied by the state ever since the 1925 enactment. It also contends that the statute clearly imposes a direct tax on the distributor, and, thus applied, that it presents no constitutional doubt. Naturally, it also contends that the interpretation sought by the state is an attempt to modify and amend the act itself, thus making it a new and different act than the one adopted by the legislature.

The state, on the other hand, contends that if the act be so construed it is violative of Minn. Const. art. 4, § 12, prohibiting legislative appropriation except by appropriate bill, and that the result here amounts to an appropriation from tax funds to defendant's advantage; that art. 9, § 1, requiring that taxes shall be levied and collected only for public purposes, is violated; and, also, that it is violative of art. 9, § 5, which requires the proceeds of the

gasoline tax to be placed in the trunk highway fund. These, briefly, are the issues.

In view of the claims thus presented, it may be helpful to review our legislative history relating to this type of taxation.

Prior to the 1925 enactment our statutes provided (G. S. 1923, §§ 3778, 3779, 3781, and 3784) for the inspection of gasoline imported into the state and the payment of an inspection fee by the "distributor." The present law is based upon and tied in with the inspection of gasoline and the collection of the inspection fee therefor. The tax is an excise charged "on all gasoline used in producing or generating power for propelling motor vehicles used on" our highways. Section 2 of the 1925 act provides that the tax "shall be payable at the times, in the manner, and by the persons hereinafter specified," and § 9 that all gasoline inspected for unloading or produced or brought into the state "shall be deemed to be intended for use in motor vehicles in this state" and that the tax shall be deemed to have been paid for and on behalf of the person so using the gasoline. The time, manner, and the person to be charged are described in other sections, which provide that the inspector shall certify to the state auditor (§ 3) "the name and address of each person for whom he inspected gasoline * * * the aggregate number of gallons inspected, and the amount of tax payable on account thereof." A separate certificate is required for "each such person." The auditor then draws his draft "on the person therein named," and the auditor's draft is made *prima facie* evidence of the amount due the state "from the person against whom the same is drawn." (§ 7.) It is significant that § 3 of the 1925 act was amended by L. 1927, c. 434, § 1, so that the chief oil inspector instead of the state treasurer was made the collection agent for the state. But there was no change in the requirement that the tax statement based upon gallonage should be sent to the person for whom the gasoline was inspected. By L. 1927, c. 435, G. S. 1923, § 3784, was amended so as to provide that the statement for inspection fees might be combined with "the statement of the excise tax on

gasoline due from such distributor." And this phrase recurs in L. 1929, c. 425, § 15, and L. 1937, c. 479. It is therefore plainly to be seen that the "person" upon whom the gasoline tax is imposed is the "distributor," for whom the gasoline is inspected. Clearly, these amendments have not changed the incidence of the tax as originally imposed under the 1925 act. L. 1927, c. 435, simply added to the inspector's duty the one of including the tax statement with the amount due for oil inspection fees. This, obviously, was intended to simplify and speed the collection of both items. Similarly, L. 1927, c. 434, § 3, added a penalty provision to § 5 of the 1925 act, and provided thereby that the "tax imposed" thereunder "and the penalties and interest thereon shall be" a prior lien upon the property "of the distributor or person from whom it is due." And § 6 was amended thereby (L. 1927, c. 434, § 4) so as to provide that the "inspector shall deliver to the attorney general a certified statement of the amount due from each person whose excise taxes are delinquent," stating the address of "the person owing such tax," whereupon the attorney general, "upon receipt of any such statement," is in "duty" bound "to bring an action in the district court of Ramsey county, or of the county in which the taxpayer resides, to recover the amount of such tax with penalty, interest, costs and disbursements." Again, L. 1933, c. 417, § 6 (3 Mason Minn. St. 1940 Supp. § 2720-88) amended the law so as to require each distributor to be licensed and give a bond "conditioned for the payment when due of all gasoline excise taxes, revenue inspection fees and penalties and accrued interest * * * to cover any and all places of business within the state where petroleum products are distributed by the distributor or licensee" and "in twice the amount of the monthly average of the amount of gasoline excise taxes paid" by the distributor during the preceding year. Section 3 was again amended by L. 1935, c. 202, so as to require that "each person for whom gasoline has been inspected as herein provided for and to whom the three per cent tax deduction has been allowed for evaporation

and loss shall at the time of settlement submit satisfactory evidence that one-third of such three per cent deduction from the tax shall have been paid or credited to retail service stations or other retail distributors on all quantities of gasoline bought or consigned to them for storage or sale." Then, by L. 1937, c. 476, we find precautionary measures taken to secure collection of the tax. Thereby, if, in the opinion of the inspector, the financial condition of the distributor was such as to render credit unsafe or unsound, or if it appeared that he was or would be unable to pay "said tax," the inspector might take appropriate steps "to conserve out of the distributor's assets sufficient money or property to pay the claim." Also, § 5 of the 1925 act, previously amended by the 1927 act, was further amended by the 1937 act so as to provide that the lien "shall attach to the aforesaid property from the date of the inspection of said gasoline." Section 12 of the 1925 act was amended by L. 1939, c. 308, so as to provide that gasoline which had not come to rest should not be taxed when brought into the state by vessels or pipe lines for storage at a marine or pipe-line terminal until it was loaded into conveyances for ultimate destination in this state or in the tanks from which sales or deliveries are made.

■ From this historical review it seems clear that the legislature intended to levy the tax upon the "distributor." His responsibility is clear. Nowhere in any of these acts do we find that the excise paid by him upon gasoline later lost or destroyed from any cause may be recovered. As to him the tax is "in lieu" of all other taxes imposed upon the business of selling or dealing in gasoline. We think the legislative intent and purpose, even if it be granted that the law is subject to interpretation, clearly show the tax to be one imposed upon the distributor. So it is that, considering substance rather than form, the test heretofore applied by the state is appropriate. In its operation and necessary effect, the statute thus interpreted and applied makes for speed, simplicity, accuracy, and convenience both as to levy and collection. And, what is more, it complies with plain statutory direction.

48

■ We have not overlooked the state's argument that L. 1937, c. 476, § 3 (Mason 1940 Supp. § 2720-78) makes the distributor a fiduciary in respect to money he may have collected from his vendee on account of the tax for which the distributor was directly chargeable. The purpose of the amending act was to make the collection of the tax doubly secure by imposing upon the distributor a fiduciary relationship as between himself and the state in respect to taxes so collected by him. As we have noted, the chief oil inspector or his deputies are the collection officers for the state. Hence it is that the distributor as the person "directly or indirectly paying said tax" is "authorized to collect from the person to whom said gasoline is so sold." Thus as to the tax money thereby coming to the distributor, he holds it as a fiduciary. That is why the act, in the circumstances therein specified, authorizes him to collect the tax, and to the extent that he does so a fiduciary relationship is created, "for the violation of which, in failure to make payment when due and payable, the person so authorized to collect gasoline taxes, shall be deemed guilty of embezzlement." So, by the plain reading of the statute, violation occurs only if and when there is "failure" on his part to make payment when the tax is "due and payable." If he makes such payment there is no statutory or other violation. His fiduciary obligation then has been met. Here there is no claim otherwise. Defendant has paid the full tax based upon the volume of gallons inspected, less the three per cent deduction allowed by statute.

■ We are urged to construe the statute so that instead of reading, "a deduction of three per cent * * * shall be allowed," it shall read, "a deduction equal to the actual losses but not exceeding three per cent may [or shall] be allowed." The trouble with that argument is that the statute has fixed the measure upon which the tax is computed. Furthermore, when the gasoline tax system was adopted the machinery for inspection of gasoline was already functioning. The inspection system was utilized in levying and collecting the gasoline tax when the tax system came into

being. It is a matter of common knowledge that after inspection the gasoline is usually loaded into tanks or tank trucks. From there it is taken to filling stations to be there sold at retail, usually in small quantities. As gasoline is a highly volatile product and passes through various movements before it reaches the ultimate consumer, it is obviously difficult to determine the exact evaporation and spillage. Likewise, temperature changes produce variations in the volume. It would be physically impossible to trace the contents of a particular tank car so as to exact a gallonage tax from the ultimate user. If the distributor's gasoline should be lost by fire, theft, or any other casualty, the statute nevertheless places the tax burden upon him. In practical effect and operation, he is the direct taxpayer.

"The selection of subjects of taxation and exemption is inherent in that [legislative] power. The process of selection involves classification with resulting diversity in the subjects selected for taxation and exemption as well as in the amount of the tax." C. Thomas Stores Sales System, Inc. v. Spaeth, 209 Minn. 504, 297 N. W. 9.

This selection is subject only to constitutional restraints.

In the same case, on the subject of classification, we said (209 Minn. 517, 297 N. W. 17):

"Reasonable men might differ as to where the line of classification should be drawn, but that is not sufficient ground for upsetting the classification. * * * It is for the legislature to say where the line shall be drawn, for 'within the field where men of reason may reasonably differ, the legislature must have its way.'"

The legislative determination of what should be allowed, if anything, for "evaporation and loss" for the purpose of fixing a base upon which taxation should rest, is, we think, conclusive in the circumstances here appearing. Within constitutional limits, legislative authority is final and conclusive.

Here, as we have seen, the taxes are levied at the source, *i. e.,* at the time and place of the inspection, and they are then and thereby made a charge against the person for whom the inspection is made. The law clearly allows a deduction for "evaporation and loss." The legislature might well have deemed it to be of advantage to the state to have deductions determined once and for all. By this method, the necessity for future checking or accounting to ascertain actual losses was done away with. The legislature foresaw that if the matter were to be left open to future adjustment and determination disputes and controversies would likely arise between dealers and the state's administrative officers. The expense of pursuing gallonage and checking the amounts actually used might well be considered to be so great that any other method than the one adopted would be impracticable. In any event, the fact remains that the legislature has adopted this form. It is not for administrative officers, or the courts, by forced interpretation, to amend the act. *Cf.* State v. Standard Oil Co. 190 La. 338, 182 So. 531; State v. Sinclair Refining Co. 195 La. 288, 196 So. 349; People ex rel. Studebaker Corp. v. Gilchrist, 244 N. Y. 114, 155 N. E. 68. Moreover, the consistent policy of the state's collection officers in following a literal application of the law over a period of more than 15 years is entitled to great weight.

As the gasoline tax is imposed directly upon the "distributor," who is the one for whom the gasoline is inspected, it necessarily follows that the constitutional attacks made upon the act come to naught.

The result reached by the trial court is right, hence the order in No. 32,718 and the judgment in No. 32,797 are affirmed.