## HALLETT CONSTRUCTION COMPANY v.
## G. HOWARD SPAETH.[1]

June 5, 1942.

No. 33,195.

*Bowen & Bowen,* for appellant.

*J. A. A. Burnquist,* Attorney General, and *P. F. Sherman,* Assistant Attorney General, for respondent.

Loring, Justice.

The plaintiff sought in this action a declaratory judgment construing L. 1925, c. 297, as amended by L. 1937, c. 376, as applied to its right to a refund of the gasoline excise tax imposed by that chapter on gasoline used in its stationary engines which furnished the power for its gravel processing machinery in its gravel pits.

[1]Reported in 4 N. W. (2d) 337.

These machines were not operated on the public highways, but a part of the gravel processed by them was used in road construction and maintenance. It is the tax on the gasoline so used to process gravel used in maintenance and construction that the state refused to refund. It concedes a refund on the gasoline used in processing gravel to be used for other purposes.

Prior to the 1924 general election, Minn. Const. art. 9, § 5, had restricted the incurring of debts for work of internal improvement. At that election the voters amended that section by providing that, insofar as it related to such works, it should thereafter read as follows:

"The state shall never contract any debts for works of internal improvements, or be a party in carrying on such works, except as authorized by section 16 of Article 9, and by Article 16 of this Constitution, but *it may levy an excise tax upon any substance,* material, fluid, force or other means or instrumentality, or the business of dealing in, selling or producing any or all thereof, *used or useful, in producing or generating power for propelling motor or other vehicles used on the public highways of this State,* and *shall place the proceeds of such tax in the Trunk Highway Fund provided for in Section 2 of said Article 16."* (Italics supplied.)

Pursuant to the authority contained in this amendment, the legislature in 1925, enacted c. 297, entitled:

"An act to provide an excise tax on gasoline  *  *  *  used in producing or generating power for propelling motor or other vehicles used on the public highways of this state, to provide for the enforcement and collection of same and to prescribe penalties for the violation thereof."

Subdivision (b) of § 1, which defined terms used in that act, provided:

" 'Motor vehicles used on the public highways of this state' includes every vehicle operated upon the highways of this state the

power for the operation of which is produced or generated by gasoline, but does not include tractors used solely for agricultural purposes or for drawing threshing machines or for road work other than hauling material."

Section 2 of the act imposed a tax of two cents per gallon "on all gasoline *used* in producing or generating power for propelling motor vehicles *used* on the public highways of this state." (Italics supplied.) That is the tax here involved.

For convenience in the administration of the law and in the collection of the tax, § 9 of the act provided that all gasoline produced or brought into the state—

"shall be deemed to be intended for use in motor vehicles in this state, and every person who pays the tax imposed by this act shall be deemed to have paid the same for and on behalf of the person using such gasoline in motor vehicles in this state."

It further provided that if the person who paid the tax sold or otherwise disposed of the gasoline except to the United States he was authorized to "collect" the tax from the person to whom he sold or disposed of the gasoline.

Section 10 of the act provided for reimbursement of the tax to any person who bought and used the gasoline "for any purpose other than use in motor vehicles."

Section 10 was subsequently amended by L. 1937, c. 376, Mason St. 1940 Supp. § 2720-79, so as to read in part as follows:

"Any person who shall buy and use gasoline for any purpose other than use in motor vehicles, *or for use in machinery operated for the purpose of constructing, reconstructing or maintaining the public highways of this state,* and who shall have paid any excise tax required by this act * * * shall be reimbursed and repaid the amount of such tax paid by him upon presenting to the inspector a verified claim * * * which claim shall set forth the total amount of such gasoline so purchased and used by him other than in motor vehicles, *or for use in machinery operated for the purpose of constructing, reconstructing or maintaining the public*

*highways of this state,* and shall state when and for what purpose the same was used." (Amended portion indicated by italics.)

It is out of the difference of opinion between the state and the plaintiff as to how this 1937 amendment should be construed that this suit arises. It is the contention of the state that the italicized words were added to § 10 for the purpose of making a further exception from the right to a refund, whereas plaintiff contends that it added to the right of refund theretofore existing the tax upon gasoline bought for use in machinery used in connection with the construction, reconstruction, or maintenance of the public highways of the state.

It is quite obvious from the tenor of the amendment to Minn. Const. art. 9, § 5, that the people of the state were thereby authorizing a tax on gasoline used in motor vehicles which were in turn used on the public highways of the state, and that they were not attempting to authorize a general sales tax on gasoline. We consider as wholly unjustified and altogether too tenuous the theory advanced by the state that the inclusion of the word "useful" in the amendment signifies a purpose to authorize a tax upon gasoline because it could be, but was not, used in motor vehicles upon the highways. Doubtless the word was included in the constitutional amendment to give the legislature more complete control over dealers or distributors of gasoline. It is significant that the legislature dropped the word "useful" from the title and body of c. 297 and provided only for a tax on gasoline *used* on the highways. Evidently it was of the opinion that the word "useful" did not extend the purpose of the amendment beyond the obvious one of taxing gasoline actually used on the highways as compensation for such use. We are in accord with that view. The purpose of the amendment was to raise money for the trunk highway fund by imposing a tax for the use of the highways in proportion to their use by motor vehicles. The tax was regarded as an eminently fair means of compensating for the wear and tear imposed by motorists upon the highways. As said in the Federal Highway

Act, 48 St. 995, § 12, approved June 18, 1934, 23 USCA, § 55, "it is unfair and unjust to tax motor vehicle transportation unless the proceeds of such taxation are applied to the construction, improvement or maintenance of highways." Even if the legislature had the power to go beyond the terms of the constitutional authorization, it would be absurd to conclude that it intended to single out gasoline used in road-building machinery as the only subject outside of motor vehicles upon which a tax should be imposed. Since the tax is imposed on the theory that it is compensation to the state for the use of its highways, the reason for exempting machinery used to improve or construct highways from a tax levied on vehicles which wear out the highways is apparent and logical. The fair tenor of the amendment to § 10 of c. 297 justifies that construction, and no amount of administrative interpretation can upset it.

True, subd. (b) of § 1 of c. 297 exempted from the tax tractors used in road work, but machinery other than tractors may be used, and is used, in construction and maintenance work. It must be borne in mind that the tax imposed by the 1925 act is a tax on gasoline used in motor vehicles used on the highways and that the refund provisions are merely to facilitate the return of moneys collected for gasoline not used for that purpose. Administratively, instead of collecting the tax at the point where the gasoline went into the vehicle's gas tank, it was more convenient for the state to subject all gasoline to the tax and then return the trifling part of the money collected to those who used the gasoline for purposes which did not render it subject to the tax. Bearing that in mind clarifies the legislative purpose.

In Arneson v. W. H. Barber Co. 210 Minn. 42, 297 N. W. 335, 339, most relied upon by the state, the question at issue was the validity of the legislature's determination of the percentage of allowance for evaporation and loss. It was held that the legislature could well determine that a certain percentage could be deducted in advance "once and for all" to cover such loss. Here the state endeavors to attach to the remark made in that opinion

to the effect that this percentage provision covered a loss by fire, the interpretation that a tax on gasoline not used in motor vehicles was authorized by the constitution and laws heretofore referred to. We see no support for the state's theory in the Arneson case.

Order reversed.

MR. JUSTICE STONE, absent because of illness, took no part in the consideration or decision of this case.