STATE EX REL. CITY OF ST. PAUL v. G. HOWARD SPAETH.[1]

January 31, 1947.

No. 34,276.

[1]Reported in 26 N. W. (2d) 115.

*Bruce J. Broady* and *Ira Karon,* for appellant.

*J. A. A. Burnquist,* Attorney General, and *David W. Lewis,* Assistant Attorney General, for respondent.

*R. S. Wiggin,* City Attorney, and *John F. Bonner,* Assistant City Attorney, filed a brief as *amici curiae* on behalf of the City of Minneapolis.

*Orville C. Peterson* filed a brief as *amicus curiae* on behalf of the League of Minnesota Municipalities.

LORING, CHIEF JUSTICE.

This is an appeal by the city of St. Paul from a judgment for respondent discharging an alternative writ of mandamus directed to him as commissioner of taxation, which sought to compel approval by him of the claim of the city for a refund of taxes paid on gasoline used by the city in trucks, machinery, and equipment employed in constructing, reconstructing, and maintaining the public highways within the corporate limits of the city. It was stipulated that all the gasoline for which the refund is sought was consumed on the public streets and highways for their construction, repair, and maintenance.

As supporting its claim to a refund, the city asserts that the gasoline tax statute (L. 1941, c. 495) violates Minn. Const. art. 9, §§ 1 and 5.

Prior to 1924, art. 9, § 5, prohibited the state from carrying on works of public improvement, except as authorized by art. 9, § 16, and by art. 16, adopted in 1920, creating a trunk highway system and authorizing a tax on motor vehicles to establish a trunk highway fund to be used for the construction, repair, and maintenance of the trunk highway system. Art. 9, § 16, created the state road and bridge fund and defined the sources thereof and the disposition which

might be made of the fund. In 1924 and 1928, art. 9, § 5, was amended to read in part as follows:

"* * * *The state shall never contract any debts for works of internal improvements, or be a party in carrying on such works,* except as authorized by Section 16 of Article 9, and by Article 16 of this Constitution, *but it may levy an excise tax upon any substance,* material, fluid, force or other means or instrumentality, or the business of dealing in, selling or producing any or all thereof, used or useful, in producing or generating power *for propelling motor or other vehicles used on the public highways of this State,* and shall place *two-thirds* of the proceeds of such tax in the Trunk Highway Fund provided for in Section 2 of said Article 16, *and one-third thereof in the State Road and Bridge Fund,* * * *."* (Italics supplied.)

The relevant sections of L. 1941, c. 495, challenged by the city, are as follows:

Section 1, subd. 8. " 'Motor vehicles used on the public highways of this state' means every vehicle operated upon the highways of this state the power for the operation of which is produced or generated in an internal combustion engine, but does not include tractors used solely for agricultural purposes."

Subd. 9. " 'Used in motor vehicles' means used in producing or generating power for propelling motor vehicles *or in machinery operated for the purpose of constructing, reconstructing or maintaining the public highways of this state."* (Italics supplied.)

Section 16, subd. 1. "Any person who shall buy and use gasoline for any purpose other than use in motor vehicles, and who shall have paid the gasoline excise tax directly or indirectly through the amount of the tax being included in the price of the gasoline or otherwise, shall be reimbursed and repaid the amount of the tax paid by him * * *."

The city contends that, although the constitutional amendment empowered the legislature to levy excise taxes on gasoline used in vehicles actually operated on the highways, taxing gasoline used in vehicles operated upon the highways *for the purpose of maintaining*

*or servicing these highways* is beyond its power. The city concedes that if the legislature had the constitutional power to tax the gasoline here involved it exercised that power in L. 1941, c. 495.

The power to levy an excise tax is one of the inherent sovereign powers which the legislature can exercise unless restrained by the constitution. Arneson v. W. H. Barber Co. 210 Minn. 42, 297 N. W. 335. The exercise of the power must, of course, conform to U. S. Const. Amend. XIV, and to the so-called wide-open tax amendment to Minn. Const. art. 9, § 1, adopted in 1906. The disposition of the proceeds of the tax would also be subject to the restraints of Minn. Const. art. 9, § 5.

The state constitution specifies the source and controls the expenditure of moneys raised under authority of art. 9, § 5, as exceptions to the prohibition contained in that section against the state engaging in works of internal improvement. Consequently, placing the proceeds of an excise tax in these funds without constitutional authority would offend the constitutional restrictions in regard to such works.

The first gasoline excise tax statute was adopted in 1925. (L. 1925, c. 297.) Under § 10 thereof, the tax on gasoline consumed in (§ 1[b]) "tractors used solely for agricultural purposes or for drawing threshing machines or for road work other than hauling material" was refundable. Section 10 of L. 1925 was amended by L. 1937, c. 376, § 1, construed in Hallett Const. Co. v. Spaeth, 212 Minn. 531, 4 N. W. (2d) 337, to provide for a refund of the tax on gasoline consumed in stationary engines in gravel pits for the purpose of processing gravel subsequently used in highway construction and maintenance. By L. 1941, c. 495, § 1, subd. 9, it was provided:

" 'Used in motor vehicles' means used in producing or generating power for propelling motor vehicles or in machinery operated for the purpose of constructing, reconstructing or maintaining the public highways of this state."

There is no ambiguity in this language; its clear purpose is to im-

pose a tax on the gasoline here under consideration. This is conceded.

The tax itself was within the inherent taxing power of the legislature. Art. 9, § 5, permitted its allocation to the trunk highway and road and bridge funds. Therefore, the legislature was empowered to levy it upon gasoline consumed in all motor or other vehicles operated upon the public highways and to devote the proceeds to the purposes stated in the act.

The Hallett case, much relied upon by the city, was a suit for a declaratory judgment to determine whether users of gasoline in stationary engines which furnished power for gravel-processing machinery in gravel pits in connection with the construction and maintenance of state highways were entitled to a refund of the tax. We held that they were, under L. 1925, c. 297, as amended by L. 1937, c. 376. The question there presented for decision involved the legislative intent in the light of the constitutional purpose, rather than legislative power. The case now before us involves legislative power only, and we conclude that art. 9, § 5, does not forbid the exercise of the power to tax the gasoline here involved. The language is plain and permits of no perversion by the process of construction. It is all-inclusive as to gasoline consumed upon the highways. We can read no exception into it.

The city contends that the uniformity clause of art. 9, § 1, is violated by the imposition of the tax upon gasoline used in the vehicles here involved. That there might have been grounds for legislative classification within the class taxed by the statute and for exemption of gasoline used in vehicles within the subclassification does not vitiate the inclusion of those vehicles within the general class of gasoline users, as defined in the constitutional permission to tax for highway funds. The legislature was given the broad permission to tax the gasoline used in "propelling motor or other vehicles used on the public highways of this State." Obviously, the legislature has exercised its power within the plain terms of the constitutional limits in including the gasoline used in the vehicles here under consideration. Administrative convenience in collection of

the tax may have persuaded the legislature to include the tax in controversy. Carmichael v. Southern Coal & Coke Co. 301 U. S. 495, 57 S. Ct. 868, 81 L. ed. 1245, 109 A. L. R. 1327. The statute does not offend the uniformity clause of art. 9, § 1. We have carefully examined the cases from other jurisdictions cited by the city. They do not persuade us that our conclusion is wrong. Cases involving the uniformity provisions of other constitutions as applied to gasoline taxes may be found in Annotations, 111 A. L. R. 197, 84 A. L. R. 854, and 47 A. L. R. 985.

Judgment affirmed.

