## J. A. REED OIL COMPANY v. COMMISSIONER OF TAXATION.

134 N. W. (2d) 9.

March 19, 1965—No. 39,512.

*Robert W. Mattson,* Attorney General, and *Ralph W. Peterson,* Special Assistant Attorney General, for relator.

*Clarence O. Holten* and *James S. Eriksson,* for respondent.

OTIS, JUSTICE.

These proceedings were brought by the commissioner of taxation to review by certiorari a decision of the Board of Tax Appeals that respondent, J. A. Reed Oil Company, is not liable for a 1¢-per-gallon tax on gasoline stored in tanks used by it for retail distribution on July 1, 1963.

The facts are not in dispute. Respondent Reed was at all times pertinent a licensed distributor of gasoline with bulk storage tanks at White Bear Lake, Minnesota. In addition, the company had a dealer's certificate of registration and operated a retail service station a block or so away from its bulk plant in competition with some 16 other retail outlets in the area. The issue is whether or not on July 1, 1963, gasoline located in the company's retail tanks was in "distributor storage" within the meaning of L. 1963, c. 686, § 4.

Prior to July 1, 1963, a tax of 5¢ a gallon was imposed by the State of Minnesota on all gasoline received by licensed distributors as it was shipped into the state. They had the responsibility for paying the tax on the 23rd of each month following receipt of the gasoline.[1] Subsequent to July 1, 1963, the tax was increased to 6¢ a gallon. To cover the transition, the legislature in May 1963 adopted c. 681, amending Minn. St. 1961, § 296.02, subd. 5, to provide as follows:

"The additional one-cent excise tax shall apply to all gasoline in storage on July 1, 1963."

At the same session § 296.02, subd. 5, was superseded by c. 686, § 4, in the following language:

"The additional one cent excise tax shall apply to all gasoline in *distributor* storage on July 1, 1963." (Italics supplied.)

It is evident that the revision was prompted by what was described

[1] Minn. St. 1961, § 296.02, subd. 1; Minn. St. 296.06, subd. 1; 296.01, subds. 7, 13; 296.14, subd. 1.

as a chaotic experience in 1949 when, under similar circumstances, an attempt was made to levy and collect the tax on all gasoline in storage on July 1 of that year. The unqualified use of the word "storage" covered not only gasoline held by distributors and dealers, but also gasoline owned by farmers, contractors, and others. Enforcement on such a broad scale being impossible, the legislature in 1963 restricted the tax to gasoline in "distributor storage."

On July 1, 1963, Reed paid its 1¢-per-gallon tax on gasoline which it held in its bulk tanks, and although it reported to the commissioner that it had, in addition, 10,169 gallons in tanks at its service station retail outlet, it refused to pay the 1¢ tax on that amount, claiming the gasoline was being held in "dealer storage" and not in "distributor storage." Nevertheless, the commissioner ordered an assessment of the tax, and Reed appealed to the Board of Tax Appeals, which sustained the company's contention.

In an accompanying memorandum the Board of Tax Appeals relied on Minn. St. 296.01, subds. 7 and 9, which provide as follows:

"Subd. 7. 'Distributor' means any person (1) who receives petroleum products in this state for storage and subsequent distribution by tank car or tank truck or both, * * *."

"Subd. 9. 'Dealer' means any person, except a distributor, engaged in the business of buying and selling gasoline and other petroleum products in this state."

The board reasoned that inasmuch as Reed had both a dealer's certificate and a distributor's license and transacted business in separate locations as distinct operations, the gasoline in dispute was no longer a part of the distributor business. Since by definition a distributor was one who received gasoline "for storage and subsequent distribution by tank car or tank truck," and it was conceded that the gasoline in question was not destined for such purposes, the board concluded that as to such gasoline Reed was acting in its capacity as a dealer. The board's memorandum laid stress on the fact that the gasoline in Reed's retail outlet tanks was being sold in competition with 11 independent dealers in the White Bear Lake area, none of whom was taxed. Five

other service stations were owned by distributors, and they were assessed in the same manner as Reed. However, the board concluded that ownership alone does not determine where the tax shall fall and suggested that any other result might conflict with the uniformity and equal protection clauses of the State and Federal Constitutions.

The commissioner assigns as error two of the findings of the board, as follows:

"That on said date it was also duly licensed as a 'dealer' and as such owned and operated a retail gasoline or service station in White Bear separate and apart from its distributor business.

\* \* \* \* \*

"\* \* \* [T]he operation of Taxpayer's retail outlet was the same as that of any other independent dealer, \* \* \*."

The commissioner argues that no weight should be given to the fact Reed had a dealer's certificate; that it was issued in error and not actually needed since distributors are authorized to carry on retail operations without it; and because Reed is a distributor, and by statutory definition a dealer is anyone *not* a distributor, the company is necessarily excluded from that category. The commissioner further asserts that Reed's business is a completely integrated, unitary operation for business, accounting, and tax purposes, and that it is only *ownership* which determines the tax liability, intended *use* being relevant (for refund purposes) only after the tax has been paid. In support of this contention, the commissioner points out that under our statute the primary responsibility for paying the tax is on the distributor who receives the gasoline and that receipt and ownership are interrelated. He contends the tax on "distributor storage" is merely a part of the process of collecting the tax which is normally and routinely levied on the receipt of gas into the state by all distributors. Arneson v. W. H. Barber Co. 210 Minn. 42, 47, 297 N. W. 335, 338.

The commissioner reasons that this tax, in contrast to ad valorem taxes, provides for a method of collection beyond looking to the property itself. In addition, it is argued that Reed sustains no loss from the tax as it has already been passed on to the consumer. Much of the

commissioner's emphasis is laid on the problems which the board's decision creates in some 25 instances where both wholesale and retail operations are conducted out of the same storage tank.[2] Finally, it is asserted that there is no legal impediment to limiting a tax to a specific class of persons if practical considerations thereby expedite its collection. Basically, it is conceded that this is the purpose of assessing distributors, of whom there are some 1,300 licensed in Minnesota, while exempting dealers, of whom there are some 9,300 certified.

We have considered all the contentions advanced by the commissioner and are of the opinion that the Board of Tax Appeals correctly construed the meaning of the words "distributor storage." The law does not impose the tax on all gasoline held in storage for any purpose by distributors. Such a provision might well create constitutional problems if it taxed distributors' gasoline stored for retail outlet without taxing similar gasoline held by other dealers. By using the word "distributor" as an adjective to define storage, it seems clear that the legislature intended to distinguish it from "dealer storage." Since this gasoline was not to be transported by tank car or truck beyond the place where it was located on the date of the tax, by statutory definition it was not in the process of "distribution" within the meaning of the law.

We do not ascribe to the legislature an intent to impose or withhold a tax on persons identically situated simply by reference to the difficulty or ease with which the levy may be made and collected. Nor are we disturbed by the administrative problems inherent in ascertaining what tax is due from the 25 companies which sell both at retail and at wholesale out of the same tank. That question does not now confront the court. State v. Perry, 269 Minn. 204, 207, 130 N. W. (2d) 343, 346. We therefore conclude that the statute was intended to impose a tax equally on all of those engaged in the same type of enterprise, and since it is conceded that retail dealers are exempt, we

---

[2]No reason occurs to us why in these situations the tax cannot be determined by reference to each company's actual experience, levying it only on the gasoline which the distributors' records show was in fact distributed by tank car or tank truck.

are of the opinion that the tax may not be levied on the 10,169 gallons stored in Reed's service station tanks on July 1, 1963. The decision of the Board of Tax Appeals is therefore affirmed.

Affirmed.