## ST. PAUL, MINNEAPOLIS AND MANITOBA RAILWAY COMPANY *v.* TODD COUNTY.

ERROR TO THE SUPREME COURT OF THE STATE OF MINNESOTA.

No. 132. Argued and submitted December 18, 1891. — Decided January 4, 1892.

A decision of the Supreme Court of a State, sustaining as valid a statutory contract of the State exempting the property of a railway company from taxation, but deciding that a certain class of property did not come within the terms of the exemption, is not an impairment of the contract by a law of the State and is not subject to review in error here.

*New Orleans Water Works Co.* v. *Louisiana Sugar Refining Co.*, 125 U. S. 18, affirmed and applied.

THE court stated the case as follows :

This was a proceeding to enforce payment of taxes on real estate remaining delinquent on the first Monday of January, 1886, for the county of Todd, State of Minnesota, and was tried in the District Court of the Seventh Judicial District of that State, which made and filed findings of fact and conclusions of law and ordered judgment for the county against the railway company for the collection of the taxes in question and the interest and penalties thereon together with costs. The entry of judgment was then stayed by the District Court, which certified its findings of fact and its decision in the case to the Supreme Court of the State for its consideration. The matter having been duly argued and submitted, the Supreme Court affirmed the order of the court below, whereupon a remittitur having been sent down, judgment was given in favor of the county and against the railway company, adjudging the lands in question liable for taxes, penalties, costs and disbursements, and that the lands be sold unless the amounts were paid accordingly, and afterwards, an appeal having been taken to the Supreme Court, the judgment of the District Court was in all things affirmed. A writ of error from this court was then allowed by the Chief Justice of the State Supreme Court. The opinion of that court will be found reported in 38 Minnesota, 163, and states the case as follows:

" This railway corporation in 1882 purchased 35,000 acres of land in Todd County, which, excepting an inconsiderable portion, was timbered land. The question to be determined is as to whether these lands are exempt from ordinary taxation. The lands were purchased on account of their being valuable timber lands. Since 1885 the corporation has been engaged in cutting the timber, and converting it into boards, plank, ties and lumber of all kinds. The greater part of this has been used in constructing and repairing the railroad of this corporation in this State; the remainder (about one-third) has been used for a like purpose upon that part of the road which is in the Territory of Dakota. In some places, where the timber has been cut, grass has grown up, a small quantity of which

has been sold. Upon a part of one tract a town site had been platted before this land was purchased by the corporation, and a part of the lots are now owned by it.

" This corporation became the owner of a part of the line of the Minnesota and Pacific Railroad Company, and as to its line of road succeeded to the rights, franchises and immunities of that company, including its exemption from ordinary taxation. As to this no question is raised; nor that the charter of the Minnesota and Pacific Company is to be referred to as defining the exemption to which the St. Paul, Minneapolis and Manitoba Company is entitled. By section 1 of this charter (Laws 1857, Ex. Sess. c. 1) corporate powers were granted, including the right to acquire, by purchase or otherwise, and to hold, convey, sell and lease, property and estates, either real or personal or mixed. Section 2 empowered the corporation to locate, construct and operate a railroad. Section 3 authorized the appropriation, by virtue of the right of eminent domain, of a belt of land, not exceeding 200 feet in width, throughout the entire length of the road, and to take property even beyond that limit for certain necessary purposes. Section 16 regranted to the corporation the lands granted to the Territory by act of Congress. Section 18 provided for the annual payment to the State of three per cent of the gross earnings of the railroad, 'in lieu of all taxes and assessments whatever,' and that, 'in consideration of such annual payments, the said company shall be forever exempt from all assessments and taxes whatever ... upon all stock in the said Minnesota and Pacific Railroad Company, whether belonging to said company or to individuals, and upon all its franchises or estate, real, personal or mixed, held by said company; and said land granted by said act of Congress . . . shall be exempt from all taxation till sold and conveyed by said company.' Section 20 declared that the company should be 'capable, in law, of taking and holding any lands granted by the government of the United States, or of this Territory, or of the future State, or by other parties, which shall be conveyed to it by this act, or by deed, gift or purchase, or by operation of law, and may mortgage, pledge, sell and convey the same. . . .' "

*Mr. M. D. Grover* for plaintiff in error.

*Mr. Moses E. Clapp*, Attorney General of the State of Min-
nesota, for defendant in error, submitted on his brief.

Mr. CHIEF JUSTICE FULLER, after stating the case, delivered
the opinion of the court.

The lands in question were assessed in pursuance of sections
1 and 6, of chapter 11, of the General Statutes of the State of
Minnesota, entitled "Taxes," which are as follows:

"§ 1. All real and personal property in this State, and all
personal property of persons residing therein, the property of
corporations now existing, or hereafter created, and the prop-
erty of all banks or banking companies now existing or here-
after created, and of all bankers, except such as is hereinafter
expressly excepted, is subject to taxation, and such property,
or the value thereof, shall be entered in the list of taxable
property for that purpose, in the manner prescribed by this
act: *provided*, that railroad, insurance and telegraph compa-
nies shall be taxed in such manner as now is or may be hereafter
fixed by law."

"§ 6. All real property in this State, subject to taxation,
shall be listed and assessed every even-numbered year, with
reference to its value on the first day of May preceding the
assessment; and all real estate becoming taxable any interven-
ing year shall be listed and assessed with reference to its value
on the first day of May of that year." Stats. Minn. 1878, 4th
ed. c. 11, §§ 1 and 6; Stats. Minn. 1891, §§ 1382, 1428 and
references.

Sections 1 and 7, c. 12, of the Revised Statutes of the Terri-
tory of Minnesota for the year 1851 (p. 94) read:

"Sec. 1. All property, real and personal, within the Terri-
tory, not expressly exempted therefrom, shall be subject to
taxation in the manner provided by law."

"Sec. 7. The real estate of incorporated companies, liable
to taxation, shall be assessed in the district in which the same
shall lie, in the same manner as the real estate of individuals."

By section 2 of the schedule of the state constitution, adopted in 1857, it was provided: "All laws now in force in the Territory of Minnesota not repugnant to this constitution, shall remain in force until they expire by their own limitation, or be altered or repealed by the legislature." Stats. Minn. 1878, p. 30.

We are met on the threshold of the case by the objection that the writ of error cannot be maintained.

It is conceded that the Supreme Court of Minnesota did not put its decision on the ground that there was not a valid contract between the State and the company exempting its property from taxation, but held that the exemption claimed did not attach to these lands, and it is argued that "if such lands are within the contract of exemption contained in the company's charter, then the obligation of that contract was impaired by the assessment, under chapter 11 of the general laws of the State, and the decision of the Supreme Court holding that the lands were subject to assessment under such laws." Our jurisdiction cannot be maintained upon that view. As stated by Mr. Justice Gray, speaking for the court, in *New Orleans Waterworks Company* v. *Louisiana Sugar Refining Company*, 125 U. S. 18, 30: "In order to come within the provision of the Constitution of the United States which declares that no State shall pass any law impairing the obligation of contracts, not only must the obligation of a contract have been impaired, but it must have been impaired by a law of the State. The prohibition is aimed at the legislative power of the State, and not at the decisions of its courts, or the acts of administrative or executive boards or officers, or the doings of corporations or individuals." And the language of Mr. Justice Miller, in exposition of the rule, is quoted from two opinions of the court delivered by him: "It must be the constitution, or some law of the State, which impairs the obligation of the contract, or which is otherwise in conflict with the Constitution of the United States; and the decision of the state court must sustain the law or constitution of the State in the matter in which the conflict is supposed to exist; or the case for this court does not arise." *Railroad Company* v. *Rock*, 4

Wall. 177, 181. ' " We are not authorized by the judiciary act to review the judgments of the state courts because their judgments refuse to give effect to valid contracts, or because those judgments, in their effect, impair the obligation of contract.   If we did, every case decided in a state court could be brought here, when the party setting up a contract alleged that the court had taken a different view of its obligation to that which he held." *Knox* v. *Exchange Bank*, 12 Wall. 379, 383.

The position of the State was not that the lands in question were rendered taxable by any law passed subsequent to the company's charter, but that under the terms of the contract itself the lands were taxable.   No subsequent law is referred to upon which the opinion of the court proceeded; on the contrary, the law was the same, so far as any question arising here was concerned, as that above quoted from the territorial law of 1851.   What the court held was that statutes imposing restrictions upon the taxing power of a State, except so far as they tend to secure uniformity and equality of assessment, are to be strictly construed, *Bank* v. *Tennessee*, 104 U. S. 493, and that tested by this rule the exemption in the company's charter " was not applicable to large tracts of timber land purchased by the corporation from which to take timber to be converted into ties and lumber for the use of the corporation," and that consequently these lands were subject to taxation. It is impossible therefore for this writ of error to be sustained, and it is accordingly

*Dismissed.*

Mr. Justice Bradley and Mr. Justice Lamar were not present at the argument and took no part in the decision of this case.