**NORTHWESTERN MUNICIPAL ASS'N, Inc. v. UNITED STATES.**

No. 3656.

District Court, D. Minnesota, Fourth Division.

Feb. 3, 1938.

Hayner N. Larson, J. B. Faegre, and Donald L. Robertson, all of Minneapolis, Minn., for plaintiff.

Linus J. Hammond, Asst. U. S. Atty., of St. Paul, Minn.

SULLIVAN, District Judge.

This is a suit for the refund of federal income taxes exacted of the plaintiff for the taxpayer's fiscal year ending December 31, 1934, and for the refund of federal capital stock taxes exacted of the plaintiff for the years ending June 30, 1934, and 1935.

The plaintiff was incorporated on August 4, 1933, under the laws of the state of Minnesota, with an authorized capital of $2,500. The articles of incorporation authorized 50 shares of capital stock of the par value of each share of $50. The articles further provide that each shareholder shall be entitled to one vote for each share standing in his name on the books of the association; provided that no one shareholder shall be entitled to more than two votes, irrespective of the number of shares held by him; that no dividend or other distribution shall be made to the shareholders prior to the dissolution of the association, and that, upon the dissolution of the association, distribution shall be made to shareholders pro rata up to an amount equal to the par value of all shares held by them, and that any amounts then remaining after such distribution shall be contributed to such charitable organizations in the city of Minneapolis as may be designated by the trustees upon a liquidation. The articles further provide that the board of directors shall have authority to accept or reject subscriptions for shares made either before or after incorporation.

The purposes of the association, as set out in the articles of incorporation, are generally to provide organized representation for holders of securities issued by states, counties, cities and other municipalities, drainage districts, and other governmental subdivisions, and to advise and assist security holders with respect to their financial problems and the enforcement of their obligations, and also to advise and assist states and their governmental subdivisions in working out their financial problems with a view to preventing defaults on their outstanding securities; to act as trustee, agent, attorney in fact, or otherwise as representative of holders of municipal securities; to acquire, hold, mortgage, pledge, or dispose of state and municipal securities, either on its own account or as trustee, agent, attorney in fact, or in any other capacity as representative of the owners of such securities. The articles provide that the association shall be concerned primarily with securities issued by the states of Minnesota, North Dakota, South Dakota, and Montana, and their respective governmental subdivisions, but its activities are not limited to such states.

From the date of its organization, the plaintiff has engaged in the investigation of bond defaults, advised and counseled with municipalities defaulting or in a precarious situation as to their indebtedness, handled bond funding proceedings, and furnished attorney's opinions as to the legality of municipal bond issues. These services were rendered to different municipalities, in the situation referred to, and also to holders of municipal bonds, and to the investment houses with which the stockholders of the plaintiff association were associated and identified in executive capacities, and to its associate members, being investment houses, banks, or related institutions.

It is apparent that the activities authorized, and which were carried on by the plaintiff, included lines of work ordinarily carried on by investment bankers and attorneys at law, with the purpose of making a profit.

In some instances the plaintiff, through its agents, endeavored to obtain favorable legislation, and on occasions the officers of the plaintiff attended and consulted with legislators in South Dakota and Montana, regarding legislation designed to aid municipalities in their refinancing endeavors, and in some instances favorable legislation was obtained through the efforts of the plaintiff.

The receipts and disbursements of the plaintiff for the years 1933, down to and including the year 1937, are as follows:

| | Receipts | Disbursements |
|---|---|---|
| August 1933 to December 31, 1933 | (Receipts $705.20 less than Disbursements) | |
| 1934 | $ 8,346.73 | $4,023.24 |
| 1935 | 9,144.79 | 8,706.78 |
| 1936 | 11,727.84 | 6,768.90 |
| 1937 | 818.71 | 2,916.02 |

On September 27, 1935, the plaintiff filed an amended income tax return for the calendar year 1934, showing an income of $4,284.84, and paid a tax, with interest, of $606.99. On or about July 31, 1935, plaintiff filed an amended capital stock tax return for the year ending June 30, 1934, declaring the value of its capital stock to be $75,000, and paying a tax of $84.94. On or about July 31, 1936, plaintiff filed an amended capital stock tax return for the year ending June 30, 1935, declaring the value of its capital stock to be $79,284.84, and paid a tax of $80.78.

The plaintiff has at all times contended, prior to the payment of the taxes, and now, that it is exempt from the payment of income and capital stock tax. On November 15, 1935, plaintiff filed its claim for refund of the amounts paid, which claim was denied by the Commissioner of Internal Revenue, on March 31, 1936.

Under these facts the plaintiff contends that it was and is a "business league" within the meaning of the applicable provisions of the Revenue Act of 1934, and is therefore exempt from both income and capital stock taxes.

Statutes and Regulations Involved.

Revenue Act of 1934, title 1, 48 Stat. 700, § 101(7), 26 U.S.C.A. § 103(7):

"[Sec. 101.] *Exemptions from tax on corporations.* The following organizations shall be exempt from taxation under this title [chapter]— * * *

"(7) Business leagues, chambers of commerce, real-estate boards, or boards of trade, not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual."

Revenue Act of 1934, title 5, 48 Stat. 769, § 701, 26 U.S.C.A. § 1358 (a), (c) (1):

"Sec. 701. *Capital Stock Tax.*

"(a) For each year ending June 30, beginning with the year ending June 30, 1934, there is hereby imposed upon every domestic corporation with respect to carrying on or doing business for any part of such year an excise tax of $1 for each $1,000 of the adjusted declared value of its capital stock. * * *

"(c) The taxes imposed by this section shall not apply—

"(1) to any corporation enumerated in section 101."

Treasury Regulations 86: "Art. 101 (7)-1. Business leagues, chambers of commerce, real estate boards, and boards of trade.—A business league is an association of persons having some common business interest, the purpose of which is to promote such common interest and not to engage in a regular business of a kind ordinarily carried on for profit. It is an organization of the same general class as a chamber of commerce or board of trade. Thus its activities should be directed to the improvement of business conditions of one or more lines of business as distinguished from the performance of particular services for individual persons. An organization whose purpose is to engage in a regular business of a kind ordinarily carried on for profit, even though the business is conducted on a cooperative basis or produces only sufficient income to be self-sustaining, is not a business league. An association engaged in furnishing information to prospective investors, to enable them to make sound investments, is not a business league, since its activities do not further any common business interest, even though all of its income is devoted to the purpose stated. A stock exchange is not a business league, a chamber of commerce, or a board of trade within the meaning of the law and is not exempt from tax."

■ 1. A statute creating exemption from taxation must be strictly construed, and doubt, if any, should be resolved in favor

of the taxing authority. See Fifth-Third Union Trust Co. v. Commissioner, 6 Cir., 56 F.2d 767; Retailers Credit Association of Alameda County v. Commissioner, 9 Cir., 90 F.2d 47, 111 A.L.R. 152; Sun-Herald Corporation v. Duggan, 2 Cir., 73 F.2d 298.

2. The provisions of Regulation No. 86 have been in force and effect since the passage of the Revenue Act of 1918 (40 Stat. 1057) except for modifications not here material, and the provisions in the statute exempting "business leagues" from taxation have been re-enacted in the Revenue Acts of 1921, 1924, 1926, 1928, 1932, 1934, and 1936, both inclusive, 26 U.S.C.A. § 103 and notes, in the same wording since 1918.

■ It is settled law that administrative regulations long adhered to should be sustained. See Old Mission Portland Cement Co. v. Helvering, 293 U.S. 289, 55 S.Ct. 158, 79 L.Ed. 367; Hartley v. Commissioner, 295 U.S. 216, 55 S.Ct. 756, 79 L.Ed. 1399; Universal Battery Co. v. U. S., 281 U.S. 580, 50 S.Ct. 422, 74 L.Ed. 1051; McCaughn v. Hershey Chocolate Co., 283 U.S. 488, 51 S.Ct. 510, 75 L.Ed. 1183; Murphy Oil Company v. Burnet, 287 U.S. 299, 53 S.Ct. 161, 77 L.Ed. 318.

The Eighth Circuit Court of Appeals has said: "Where, prior to enactment of revenue law, Commissioner had promulgated and enforced administrative rules * * * subsequent enactment of statutes without substantial change therein raised strong presumption that Congress viewed regulations as in accord with its intent." Loose v. United States, 74 F.2d 147.

In New York, New Haven & Hartford Railroad Company v. Interstate Commerce Commission, 200 U.S. 361, 26 S.Ct. 272, 50 L.Ed. 515, the court stated, in passing on a regulation, that, since the construction given by the Treasury Department had been substantially the same since its enactment, the construction extending over a long period of time, when not plainly erroneous, must be treated as read into the statute.

3. Treasury Regulation No. 86 must be considered in determining whether or not the plaintiff is such a "business league" as is exempted from taxation in said statute.

Under the Revenue Act of 1934, a "business league" is made exempt from taxation providing that it is not organized for profit, and that none of the net earnings of it inured to the benefit of any private shareholder or individual.

(a) Does the plaintiff meet the requirements of the regulation in that it has some common business interest, the purpose of which is to promote common interest? Is the purpose for which the plaintiff is organized one to promote the common interest of persons engaged in the same type of business? Its articles state the purposes of its organization, including the taking care of emergency situations arising by reason of the so-called depression, in the agricultural northwest states. It is not claimed, nor is there any evidence that all the investment houses, or a large percentage of them, in the geographical limits of the field of operation of the plaintiff, are members of it, so obviously it cannot be said that the plaintiff was engaged in carrying on a program for the general betterment of the municipal bond investment business, and that it was carrying on a business which throughout the northwest area was beneficial to all municipal borrowers, or all the holders and owners of municipal bonds and obligations.

The plaintiff relies in support of its contention upon the case of Crooks v. Kansas City Hay Dealers' Association, 8 Cir., 37 F.2d 83, but there is a marked distinction in the two cases. In the Crooks Case the apparent purpose of the Kansas City Hay Dealers' Association was to eliminate certain unethical practices in the hay trade in Kansas City. The hay dealers took it upon themselves to eradicate these unfair and unethical practices, and, in carrying out their plan, organized the Hay Dealers' Association. It was the result of a concerted plan of the hay dealers of Kansas City to do those acts which, if left to the honor of certain individual hay dealers, might not have been done. In other words, the organization was perfected for the betterment of the hay marketing trade in Kansas City. In the case at bar, the creation of the plaintiff was obviously a co-operative endeavor on the part of the members of the plaintiff organization to render certain services which the individual investment banker might have been required to furnish in the municipal bond and security field. The services furnished by the plaintiff could have been, and no doubt were, rendered at a cost far less to the plaintiff than they could have been rendered and furnished by the individual investment banker, and therefore by indirection profits inured to the benefit of the individual investment banker,

who had membership in the plaintiff, or who brought to the attention of the plaintiff certain bonds and securities in which he was interested. The plaintiff, so far as the purposes set out in its articles or the evidence inform us, did not initiate any efforts for the general welfare of the bond investment business or the practices in effect in handling or disposing of bond issues or other municipal obligations. Its functions were not for the common good, but were strictly private.

(b) Another requirement of Regulation No. 86 is that the "business league" be an organization of the same general class as a chamber of commerce or board of trade. It is not contended by the plaintiff that it is a chamber of commerce or a board of trade, but, in determining whether or not the plaintiff is a "business league," it must be concluded that it either has or has not some of the attributes of a chamber of commerce or board of trade.

A chamber of commerce is defined by Webster's New International Dictionary to be "a board or association to promote the commercial interests of a locality, a country, or the like"; and Bouvier's Law Dictionary, Rawle's Third Ed.Rev., defines it as "a society of a city, who meet to promote the general trade and commerce of the place." A board of trade is defined in Webster's New International Dictionary as "a body of men organized for the advancement and protection of business interests." Apparently the only difference between a chamber of commerce and a board of trade is that the former comprehends all business in a particular geographical location, while the latter may not embrace all business, but may relate to only one type of business.

Nothing was done by the plaintiff to generally advance the bond and security interests in the territorial limits which it carved out for the exercise of the purposes set out in its articles of incorporation, nor to improve the standards of the business in which it engaged, as was done in Crooks v. Kansas City Hay Dealers' Association, supra. The plaintiff organization was set up for the purpose, among others, of providing an agency through which the member investment bankers could operate with greater economy and convenience than they could have acted individually. The plaintiff corporation has none of the attributes of a chamber of commerce or board of trade, and a

"business league," to be exempt from taxation, must possess the general characteristics of those other organizations with which the statute groups it. See Produce Exchange Stock Clearing Ass'n, Inc., v. Helvering, Commissioner of Internal Revenue, 2 Cir., 71 F.2d 142.

(c) To exempt a "business league" its activities, according to Regulation No. 86, should be directed to the improvement of business conditions or the promotion of the general objects of one or more lines of business, as distinguished from the performance of particular services for individual persons. As to this requirement, the plaintiff corporation does not meet the test. It was organized for the purpose of performing certain particular services for investment bankers. There is evidence that in some instances services were rendered in refinancing municipalities and funding obligations in which the members of the plaintiff had no interest whatsoever. There is no full disclosure to the court as to the number of these instances, nor is there any evidence as to the number of occasions on which the plaintiff rendered services in connection with refinancing and funding issues in which the members of the plaintiff were interested, but it seems obvious that the purpose of this association was to perform the particular services, enumerated in the articles of the plaintiff, in the refinancing and funding of issues in which the members of the plaintiff were interested.

4. It is contended by the plaintiff that the plaintiff is an association not organized for profit. The regulations provide that a "business league," to be entitled to exemption, must be one which is not engaged in a regular business of a kind ordinarily carried on for profit. The purposes of the plaintiff, as set out in its articles, cover a field which has been a very profitable and lucrative field for investment bankers, attorneys, and trust companies, and, under its articles, plaintiff's business could have been operated for profit.

It is said in Helvering v. Coleman-Gilbert Associates, 296 U.S. 369, on page 374, 56 S.Ct. 285, 287, 80 L.Ed. 278: "The parties are not at liberty to say that their purpose was other or narrower than that which they formally set forth in the instrument under which their activities were conducted."

The testimony in this case is that fees for certain types of services were charged and received by the plaintiff, and the earnings of the plaintiff show that profits were realized over and above the expenses of the association, from its activities. The articles of the plaintiff provide that, upon a dissolution, any moneys remaining on hand shall be turned over to certain charitable organizations to be selected by the trustees, and that no part of the net earnings of the plaintiff will inure to the benefit of any private shareholder or individual.

Profits from a corporation and benefits to its members or stockholders may be realized in other manner and way than by the actual payment of dividends to its stockholders or members.

In Houston Belt & Terminal Ry. Co. v. United States, 5 Cir., 250 F. 1, on page 4, it is stated: "It was, however, legally organized as a corporation, capable of earning and paying dividends to its stockholders, and the fact that it has not done so does not make it the less a corporation engaged in business and organized for profit, within the meaning of the corporation tax law. Profit from its organization and operation could result to its stockholders in other ways than in dividends. If the tenant companies chose to avail themselves of an agency, owned by them, which did business in a corporate capacity, then under the act of August 5, 1909, they became liable through it for the payment of an excise tax for this privilege."

The plaintiff is an adjunct to the business of the several investment banking corporations, who are represented by their agents as members of the plaintiff, and of bond and investment bankers who are associate members of the plaintiff. The members or stockholders of the plaintiff made use of the facilities and service of the plaintiff. By the operation and the carrying on of the business of the plaintiff, economy and efficiency in the handling of certain phases of the municipal bond business were obtained and consequently benefits, and incidentally profits, inured to the benefit of the members or stockholders of the plaintiff.

After due consideration of the cases cited and the facts involved in this case, it is the court's conclusion that the plaintiff association is not a "business league" within the purview of section 101 of the Revenue Act of 1934; that it was organized for profit, within the meaning of the tax laws, and that profits from its operation resulted, and that benefits and profits inured to the benefit of private shareholders or individuals, and that it is therefore not exempt from taxation.