

# THE ATTORNEY GENERAL
## OF TEXAS

GROVER SELLERS        AUSTIN 11, TEXAS

~~JOHN BEN SHEPPERD~~
ATTORNEY GENERAL

Honorable Claude Isbell
Secretary of State
Capitol Station
Austin, Texas

Attention: J. Byron Brown

Opinion No. O-7309
Re: Filing the charter of
the Texas Real Estate
Association.

Dear Sir:

       We have received your letter of July 19, 1946, which is quoted as follows:

       "Submitted herewith is a photostatic copy of the charter of the TEXAS REAL ESTATE ASSOCIATION which has been presented to our office to be filed. Such charter states as its purpose clause the following:

       "'The corporation is being formed for the purpose of establishing and maintaining uniformity in the commercial usages pertaining to real estate transactions throughout the State of Texas, to acquire, preserve and disseminate valuable business information and to adopt rules, regulations and standards concerning transactions connected with real estate, and through educational methods, meetings of members, and dissemination of literature, to better business conditions in connection with real estate matters. Said association shall have the power to provide and maintain suitable offices to perform its incorporated purposes.'

       "The attorneys for the said association have requested that such be filed under Sub-Section 105 of Article 1302, Revised Civil Statutes, 1925, and contend that the proper filing fee is $10.00 and that such corporation should be exempt from franchise taxes.

       "It has been the policy of this office to require similar associations to file under Sub-Section 53 of Article 1302, Revised Civil Statutes, 1925.

"I would be pleased if you would answer the following:

"1. Should the Secretary of State file this charter?

"2. If so, under which Sub-Section of Article 1302 does the purpose clause fall?

"3. What is the proper filing fee and franchise tax to be charged?"

We shall proceed to answer your questions in the order presented. You have stated that the attorneys for this proposed corporation have requested that the charter be filed under Section 105 of Article 1302, V. A. C. S. We quote that section as follows:

"105. Corporations may be created for one or more of the following purposes, namely: Religious, Charitable, Literary, Scientific or Educational. Acts 1945, 49th Leg., p. 119, ch. 81, § 1."

It is apparently the intention of the incorporators to place their corporation within an "educational" purpose, as that term is used in the foregoing section, by adding to their purpose clause the phrase "through educational methods." The establishment and uniformity of commercial usages and the preservation as well as dissemination of information pertaining to real estate may be in some small measure educational but if so it exists only incidentally as education is not the principal object of an association of this nature. As such, it is our opinion that the purpose of the association here does not come within the term educational as used in Section 105 of Article 1302, V. A. C. S. (A detailed discussion of corporations organized for educational purposes is stated in an opinion of this office addressed to you dated May 1, 1946 and numbered 0-7212.)

You have further stated that it has been the policy of your office to require corporations with similar purpose clauses to file under Section 53 of Article 1302, V. A. C. S., which we quote as follows:

"53. To organize cotton exchanges, chambers of commerce and boards of trade, with power to provide and maintain suitable rooms for the conduct of their business, and to establish and maintain uniformity in the commercial uses of cities and towns, to acquire, preserve and disseminate valuable business information, and to adopt rules,

regulations and standards of classification, which
shall govern all transactions with the cotton trade,
and with other commodities where standards and clas-
sifications are required, and generally to promote
the interest of trade and increase the facilities
of commercial transactions. Acts 1899, p. 58."

A comparison of the above quoted Section of Art. 1302
with that of the purpose clause of this association reveals a
close similarity of language. It is our opinion that Section 53
was designed to authorize the formation of a corporation such as
we have here. In fact, it is obvious that this purpose clause
was framed pursuant to the language contained in Section 53 with
the addition of the phrase "through educational methods", which,
in our opinion, does not change its effect.

From a reading of Section 53, it is seen that a cotton
exchange, a chamber of commerce or a board of trade may incorpor-
ate thereunder. The association here may be classified within
the term "board of trade" as a group of men organized for the
advancement of business in the field of real estate. A "board
of trade" has frequently been defined by our courts and is done
so simply and adequately in the case of Northwestern Municipal
Association v. United States, D. C. Minn., 22 F. Supp. 18, as
follows:

"A 'Board of Trade' is a body of men organized
for the advancement and protection of business inter-
ests."

Consequently, we may say that if you are otherwise satis-
fied with the charter, you may file same under Section 53 of Article
1302, V. A. C. S.

The proper fees to be charged by the Secretary of State
upon the filing of a charter are determined by Article 3914, V. A.
C. S., the pertinent parts of which we quote below:

"Upon filing of each charter, amendment or sup-
plement thereto of a corporation for the support of
public worship, any benevolent, charitable, education-
al, missionary, literary or scientific undertaking,
the maintenance of a library, the promotion of a pub-
lic cemetery not for profit, and the encouragement
of agriculture and horticulture, to aid its members
in producing and marketing agricultural products, or
for applying, raising, breeding, fattening or market-
ing livestock, a filing fee of Ten ($10.00) Dollars,
and for filing the semi-annual financial statement

of such agricultural products or livestock produc-
tion, Ten ($10.00) Dollars, which shall include the
annual license fee.

"Upon filing each charter, amendment or supple-
ment thereto of a private corporation created for any
other purpose intended for mutual profit or benefit,
a filing fee of Fifty ($50.00) Dollars. . . ." (Em-
phasis added)

As we have determined that the association here does
not have an educational purpose, it follows that it falls within
the language emphasized above and that the proper filing fee is
Fifty ($50.00) Dollars.

Article 7084, V. A. C. S., authorizes a franchise tax
for every domestic and foreign corporation chartered or author-
ized to do business in Texas. We quote below only that part of
the statute which we believe applicable to the facts here?

". . . provided, that such tax shall not be less
than Twenty ($20.00) Dollars in the case of any cor-
poration, including those without capital stock, and
provided further that the tax shall in no case be com-
puted on a sum less than the assessed value, for State
ad valorem tax purposes, of the property owned by the
corporation in this State."

Pursuant to the above statutory wording, it is our opin-
ion that the minimum of Twenty ($20.00) Dollars annual franchise
tax should be assessed against the corporation proposed here.

In conclusion, we must, of course, determine the appli-
cability of the franchise tax exemption statute to this proposed
corporation; namely, Article 7094, V. A. C. S., which we quote
in part as follows:

"The franchise tax imposed by this chapter
shall not apply to . . . or to corporations hav-
ing no capital stock and organized for the ex-
clusive purpose of promoting the public interest
of any city or town. . ."

We have set out above the only possible phrase of the
Article under which this corporation might qualify. It is fun-
damental law that where a tax is levied by a general law and one
claims an exemption therefrom by reason of an exemption statute,
he is required to bring himself clearly within the exemption.
The exemption statute, as pertinent here, requires a corporation

to be organized for the exclusive purpose of promoting the public interest. We cannot say that this corporation is so organized. On the contrary, we gather from a reading of the entire charter and the general nature of the organization that the primary purpose of the association is essentially for the private benefit of its members. The leading Texas case in this regard is McCallum v. Associated Retail Credit Men of Austin, 41 S. W. (2d) 45, wherein our Supreme Court held that the Credit Men's Association of Austin, whose purpose clause and organization was very similar to the one presented here, was not exempt from the payment of the franchise tax. The Court made the following observations:

"The Association's charter purposes read as follows:

"'The purpose for which it is formed is to acquire, preserve, and disseminate valuable business information, and to adopt rules and regulations in connection therewith.'

"A careful reading of the entire statement of facts demonstrates that the primary purposes of the Association, as disclosed by the charter and its mode and manner of operation, are not for the exclusive purpose of promoting the public interest of a city or town, but for the personal benefit of its members. Certainly, the Legislature never intended to exempt such a corporation from the tax imposed by Article 7084."

It follows from our foregoing statements that the proposed corporation here is not exempt from the payment of the franchise tax as levied by Article 7084, V. A. C. S., supra.

We trust that this satisfactorily answers your inquiry.

APPROVED AUG 9, 1946
/s/ Carlos C. Ashley
FIRST ASSISTANT
ATTORNEY GENERAL

JKA-bw-lm

Very truly yours

ATTORNEY GENERAL OF TEXAS

By /s/ Jack K. Ayer
Jack K. Ayer
Assistant

APPROVED
OPINION
COMMITTEE
BY /s/ BWB
CHAIRMAN