STATE v. P. K. M. ELECTRIC CO-OPERATIVE, INC.[1]

June 25, 1954.

Nos. 36,248, 36,249, 36,250.

[1]Reported in 65 N. W. (2d) 871.

*Olson & Holmquist* and *Harry H. Peterson,* for appellant.

*J. A. A. Burnquist,* Attorney General, *Reginald F. Holschuh,* Special Assistant Attorney General, and *A. A. Trost,* County Attorney, for respondent.

NELSON, JUSTICE.

This is a proceeding commenced by the state of Minnesota against P. K. M. Electric Co-operative, Inc., as taxpayer, to enforce payment of alleged delinquent personal property taxes for the years 1948, 1949, and 1950, assessed against taxpayer's personal property upon an ad valorem basis. The matter came on for trial before the district court in the city of Warren, Minnesota, June 14,

1951. The trial court made findings sustaining the tax and ordering judgment therefor in the amount of $3,836.76 for the year 1948. A motion in the alternative for amended findings of fact and conclusions of law, or a new trial, or reopening of the decision for taking of additional testimony was denied by the trial court. Taxpayer appeals from the judgment entered for the 1948 taxes.[2]

The taxpayer is a co-operative light and power association duly organized May 20, 1940, under the provisions of L. 1923, c. 326, and laws amendatory thereof (M. S. A. 17.28, 308.05 to 308.18, 308.42). It has its principal place of business at Warren, Marshall county, Minnesota, where it also maintains a warehouse. It is engaged in the distribution and furnishing of electric heat, light, and power to its members upon a mutual, nonprofit, and co-operative plan, in rural areas within the counties of Polk, Kittson, and Marshall in the state of Minnesota.

Taxpayer, pursuant to the provisions of M. S. A. 1945, §§ 273.39 to 273.41, filed Commissioner of Taxation Form No. 81 with the department of taxation on March 16, 1948, and reported and paid a membership tax in the amount of $290 based upon its 2,839 enrolled members as of December 31, 1947.

Taxpayer also filed Commissioner of Taxation Form No. 81-6 and 81-7 with the department of taxation on July 27, 1948, and reported therein the following book values of its property as of May 1, 1948:

| | |
|---|---:|
| "Item 29, Office furniture and equipment | $ 3,226.99 |
| "Item 19, Tools, equipment and machinery | 12,673.79 |
| "Items 26-27, Merchandise for resale | 4,840.47 |
| "Item 22, Poles and cross-arms | 13,339.64 |
| "Item 31, All Class 3 property not assessed in Items 10 through 30 | 81,614.11 |
| "Total | $115,695.00" |

---

[2] While the issues at the trial below and on this appeal involve only the 1948 taxes, the parties have stipulated that the decision here shall be decisive of appeals taken involving the 1949 and 1950 taxes, judgment having been entered for the year 1949 in amount of $2,941.50 and for the year 1950 in the amount of $1,831.38.

The taxpayer claims that the above property is not subject to an ad valorem tax for the reasons that the property taxed is part of taxpayer's "distribution lines and the attachments and appurtenances thereto" and that payment by the taxpayer of the $10 membership fee for all its members was "in lieu" of all personal property taxes upon said property under and by virtue of the aforesaid statutory provisions, including the tax in question. The taxpayer also sets up as *res judicata* a judgment rendered in the case of the 1945 taxes holding the property in question not subject to an ad valorem tax under the circumstances and as it was found to exist at that time.

In order to obtain a comprehensive view of the issues involved it is necessary to give consideration to §§ 273.36 through 273.42. Section 273.36 provides that personal property of electric light and power companies situated in cities and villages shall be assessed where situated. Under §§ 273.37, 273.38, and 273.42 the legislature provided that the personal property of electric light and power companies situated outside the corporate limits of municipalities should be assessed, not by the local assessors but by the commissioner of taxation, at the average rate in the county, and that the taxes upon such property should be distributed in equal parts to the general revenue fund of the county and to the general school fund of the county. By §§ 273.39, 273.40, and 273.41 the legislature imposed a tax of $10 for each 100 members or fraction thereof on co-operative electric associations in rural areas, and provided that the tax should be "in lieu" of all personal property taxes upon the distribution lines in rural areas of such companies. It was further provided that the tax based on membership should be paid to the commissioner, of taxation and, after deduction of expenses of administration, distributed to the respective counties in proportion to the membership in co-operative associations, and by each county distributed in equal parts to the general revenue fund and general school fund of that county.

The legislature did not by the aforesaid sections of the statute change the method of assessing either the *transmission* lines of co-

operative associations or their personal property *not located in rural areas.* Such lines remained assessable by the commissioner of taxation as provided by §§ 273.37, 273.38, and 273.42, and property within the corporate limits remained assessable as provided by § 273.36.

That § 273.37 is applicable to co-operative property as well as the property of individuals, partnerships, and private corporations supplying electric power is made clear by the proviso in § 273.38 for assessing distribution lines and attachments and appurtenances thereto used primarily for supplying electricity at retail to farmers at five percent of true value which also stipulates that the proviso does not apply to co-operative associations organized under L. 1923, c. 326, which are engaged in the electric, heat, light, and power business. It therefore appears that the legislature, having provided for a commutation tax on distribution lines of co-operative associations, also intended to grant a corresponding reduction in the tax on distribution lines of the competing private power companies by providing that such lines should be assessed at only five percent of the full and true value.

It would appear therefore that we are discussing more or less companion pieces of legislation, for L. 1939, c. 303 (§§ 273.39, 273.40, and 273.41) and c. 321 (§ 273.38) appear to have been debated, amended, considered, and passed at the same time.[3] The subject matter, purpose, and effect of these two pieces of legislation would strictly indicate that they ought to be construed as one law to whatever extent necessary to carry out the legislative intent.[4]

■ Respondent argues that the history of the development and interpretation of the aforesaid statutes indicates the affirmative intention on the part of the legislature to avoid granting R. E. A. co-operatives discriminatory, economic, or tax advantages over their private competitors, and that the aforesaid statutes if taken together under legal analysis support the construction of the statutes for which they contend. Appellant's contention is in direct opposi-

[3]See, Journal of the House 1939, pp. 621 to 623, 997, and 1055; Journal of the Senate 1939, pp. 812, 823, 1308, and 1309.

[4]See, 18 M. S. A. p. 53, and specifically p. 83 thereof. See, also, Report of Department of Taxation 1942, p. 45.

tion thereto and it points out that the legislature's reference to co-operative associations of this nature in § 273.40 as quasi-public in their nature reveals legislative intent to create an all-out exemption for co-operative associations upon payment of the $10 membership tax, and that therefore a practical interpretation to effectuate this purpose must be applied.

The fact that L. 1939, c. 321, extended comparable tax advantages to privately owned utilities supplying the same market as this co-operative indicates that the latter were to be granted no more "public" classification than others in the same field. Appellant was organized under enabling legislation now found in M. S. A. c. 308, and that chapter makes no reference to any public classification whatsoever.

■  The membership tax imposed under § 273.41 is an "in lieu" tax. This tax does not *exempt* the distribution lines from personal property taxes. When the membership tax is paid, however, the personal property taxes thereon are commuted. There are certain features of this "in lieu" membership tax which are similar to the "in lieu" gross earnings tax imposed upon railroads under § 295.02. The "in lieu" gross earnings tax creates a commutation of railroad property from ordinary taxation. To that extent there is similarity. The appellant relies upon these certain features, which it contends are similar, in taking the position that its property, which was located in the city of Warren on May 1, 1948, was not subject to an ad valorem tax. In that respect they rely on and cite in support of their contention County of Ramsey v. Chicago, M. & St. P. Ry. Co. 33 Minn. 537, 24 N. W. 313, and City of St. Paul v. St. Paul, M. & M. Ry. Co. 39 Minn. 112, 38 N. W. 925.

We think that there are important controlling distinctions to be considered since in the case of the gross earnings commutation tax imposed under § 295.02, the tax is in lieu of *all* taxes upon *all* property within this state owned or operated for railroad purposes by such company including equipment, appurtenances, appendages, and franchises thereof. In those cases it appears clearly that the gross earnings "in lieu" tax as to railroads is based upon the assumption

that the exempted property will be held and used for the purposes for which the "exemption" was granted, and through such use yield to the railroad corporation an income and to the state a percentage of the same in lieu of direct property taxation. Property held by railroad companies not used for railroad purposes is taxable in the ordinary way where the railroad company's charter does not expressly provide for an exemption of all property, and the courts in this state have applied this rule to lands which have ceased to be used for railroad purposes or which have been either returned to individuals or allowed to remain vacant.[5] If we apply the "in lieu" provisions of the aforesaid statutes to taxpayer's property located in the city of Warren which the state contends constitutes no more than auxiliary property to the distribution lines and attachments and appurtenances thereto, it would not only reduce the amount of property subject to the ad valorem tax but there would not inure to the state any compensating benefit by reason of a corresponding tax increase on some other basis.

It was undoubtedly the intent of the legislature to give relief to and encourage rural co-operative associations through enactment of membership tax commutation legislation, and the applicable statutory provisions taken together indicate that it was also the legislative purpose and intent to avoid giving the co-operative associations an undue or unfair competitive advantage over their private competitors.

It must be noted that the legislature did not enact any special tax commutation provisions or advantages with respect to *personal property located in municipalities* whether owned either by a co-operative business or a private company. Section 273.36 provides that personal property of electric light and power companies having a fixed situs in any city, village, or borough in this state shall be listed and assessed where situated without regard to where the principal or other place of business of the company is located. There

---

[5]County of Ramsey v. Chicago, M. & St. P. Ry. Co. *supra;* Whitcomb v. Ramsey County, 91 Minn. 238, 97 N. W. 879; County of Todd v. St. Paul, M. & M. Ry. Co. 38 Minn. 163, 36 N. W. 109, error dismissed, 142 U. S. 282, 12 S. Ct. 281, 35 L. ed. 1014.

was no amendment to this section when other companion sections were amended, and it is therefore clear that § 273.36 is not included in the exclusion or supplemental commutation provision embodied in § 273.38.

Furthermore, it cannot be overlooked that rural *transmission* lines of a co-operative business, no matter where located, were not included in the class of property upon which the ad valorem tax was commuted. This accords with the legislature's nonaction in the legislative session of 1939 with respect to transmission lines owned by private operators. (L. 1939, c. 303 and c. 321.)

The respondent emphasizes the fact that the property of the taxpayer listed as being on hand May 1, 1948, consisting in part of construction materials, poles, cross-arms, transformers, and other like items and materials, are equally adaptable for incorporation into transmission lines on which it clearly appears that the legislature did not intend to commute the tax. The legislature must have known and must have had in mind that the same materials could also be incorporated into R. E. A. transmission lines, and respondent contends that the legislative intent is rendered clear by the fact that the legislature provided for commutation of taxes upon "attachments and appurtenances thereto" only after they had been physically incorporated into a distribution line. Respondent therefore maintains that it is justified in taking the position that the legislature only intended the limited commutation specifically provided for under a strict construction of § 273.41.

What type of construction then should be put upon the statutory words or provisions in question here? The respondent contends that the principal of strict construction must be applied to taxpayer's property located in the city of Warren as of May 1, 1948. It contends for the rule that a statute creating exemption from taxation must be strictly construed and that any doubt should be resolved in favor of the taxing authority, citing Northwestern Municipal Assn. v. United States (D. Minn.) 22 F. Supp. 18, affirmed (8 Cir.) 99 F. (2d) 460; In re Estate of Raynolds, 219 Minn. 449, 18 N. W. (2d) 238; C. Thomas Stores Sales System, Inc. v. Spaeth, 209 Minn.

504, 297 N. W. 9; State v. Redwood Falls Bldg. & Loan Assn. 45 Minn. 154, 47 N. W. 540, 10 L. R. A. 752; Christian Business Men's Committee v. State, 228 Minn. 549, 38 N. W. (2d) 803; Ramaley v. City of St. Paul, 226 Minn. 406, 33 N. W. (2d) 19. These cases were decided upon the following premise:

"Inasmuch as taxation is the rule and exemption is an exception in derogation of equal rights, there is a presumption that all property is taxable. Therefore he who seeks tax exemption bears the burden of proof." Christian Business Men's Committee v. State, 228 Minn. 555, 38 N. W. (2d) 809.

and further that:

"* * * An exemption from taxation is a privilege of such high order and is so rarely granted that it can be established or extended only by, and according to the reasonable and natural import of, clear and explicit language and not by implication or presumption." Ramaley v. City of St. Paul, 226 Minn. 412, 33 N. W. (2d) 23.

Under the decisions of this state, the taxpayer has the burden of proving his contentions against the assessment as made by showing that the ad valorem tax is not applicable to the property in question which was not at the time incorporated into any part of taxpayer's system and that such property was "exempt" under the commutation membership provision in § 273.41.

A careful reading of §§ 273.38 and 273.41 will disclose that the term or words used, to wit: "distribution lines, and the attachments and appurtenances thereto" are identical in both sections. This brings us to the question whether, if the personal property of the taxpayer in the instant case is covered by the commuted tax, similar treatment would not have to be given to like or similar personal property owned by private heat and electrical companies subject to the tax under § 273.37. Under the strict-construction rule no such intent can be reasonably ascribed to the legislature. There is no dispute between the parties on the proposition that all of the properties which the trial court found were subject to an ad valorem tax were physically stored or located in the village of Warren on

May 1, 1948. We are unable from the record in this case to reach the conclusion that materials in the instant case, such as office equipment, merchandise held for resale, small tools, other equipment, materials used in maintenance operations or the building of transmission lines, and electrical equipment stored in warehouse or yard but which, according to the testimony, was not yet incorporated into the system nor earmarked for immediate incorporation, are distribution lines or constitute part of distribution lines. We cannot make out of these items attachments or appurtenances to a distribution line under the testimony. If we go to Webster's New International Dictionary we find the word "attachment" defined as "Something attached; some adjunct attached to an instrument, machine, or other object," and the word "appurtenance" is defined as "That which belongs to something else; adjunct; appendage; an accessory; something annexed to another thing more worthy." On the state of the record the personal property here does not, in our opinion, qualify as attachments and appurtenance to the distribution lines.

The testimony indicates, and clearly so, that previously and years back the defendant taxpayer, when entering into its contracts for the building of distribution lines, had contracted for both labor and material but that later because of certain conditions that arose it began purchasing and stock-piling its own materials and only contracted for labor, and that such materials were stock-piled from time to time and none of those involved here were specifically earmarked for any distribution line awaiting immediate conversion into attachments and appurtenances thereto. Under the circumstances the interpretation of clear unequivocal statutory provisions when taken together must be that no part of the property involved herein qualifies as attachments and appurtenances to the distribution lines of the taxpayer.

The taxpayer places great reliance on Minnesota cases that deal largely with the exemption within the meaning of Minn. Const. art. 9, § 1,[6] which provides in part:

[6]Village of Hibbing v. Commr. of Taxation, 217 Minn. 528, 14 N. W. (2d) 923, 156 A. L. R. 1294; State v. Second Church of Christ, Scientist, 185 Minn. 242, 240 N. W. 532; State v. Board of Foreign Missions of Augustana Synod, 221 Minn. 536, 22 N. W. (2d) 642.

"* * * but public burying grounds, public school houses, public hospitals, academies, colleges, universities, and all seminaries of learning, all churches, church property and houses of worship, institutions of purely public charity, and public property used exclusively for any public purpose, shall be exempt from taxation, * * *."

We fail to see where these cases are in point and where they support the position taken by the appellant. Those cases involve statutory provisions which reiterate a *true* exemption granted by the constitution. In State v. Board of Foreign Missions of Augustana Synod, 221 Minn. 536, 542, 22 N. W. (2d) 642, 645, this court said:

"* * * Although it is a general rule that constitutional provisions exempting property from taxation are to be strictly construed, such provisions, though not subject to extension by construction or implication, are to be given a reasonable, natural, and practical interpretation to effectuate the purpose for which the exemption is granted."

Those cases are hardly in point when we must give consideration to narrow and limited tax commutation such as the legislation applicable to the instant case.

■ The taxpayer also relies on a decision involving an ad valorem tax assessed against this taxpayer for the year 1945 which was later submitted to the trial court, with subsequent findings made and judgment entered. An examination of the exhibit constituting the judgment roll in that proceeding furnishes ample evidence to distinguish the facts in that case from the facts litigated in connection with the 1948 tax. In that case this taxpayer was proceeding under a contract for both material and labor which it was forced to discontinue for a period of time due to a situation over which it had no control. There the court concluded that the fact that a contractor furnished both the labor and material was proof that the materials were sufficiently earmarked and then available by intent to become attachments and appurtenances to the distribution line under construction. It was not a case, as we have here, of stock-piling material including merchandise for repairs and resale, trucks not subject to an ad valorem tax, and materials not earmarked although adapt-

able to either distribution lines or transmission lines, the latter of which is not included under the commutation provision. The question of law here may be litigated in this case regardless of what the decision was in the 1945 tax case, and we so hold. See, Gustafson v. Gustafson, 178 Minn. 1, 226 N. W. 412; Swank v. St. Paul City Ry. Co. 61 Minn. 423, 63 N. W. 1088; 10 Dunnell, Dig. (3 ed.) § 5160b; 23 Minn. L. Rev. 99; Annotation, 88 A. L. R. 574.

We conclude that the intent is implicit in the statutes under consideration here to grant to the taxpayer only a limited commutation of personal property taxes as applicable to rural electric co-operative associations and that the rule of strict construction is applicable. We further conclude that the finding of the trial court that the taxpayer's property was subject to an ad valorem tax as of May 1, 1948, was proper and must be sustained and that the decision of the court below is applicable to the ad valorem taxes assessed for the years 1949 and 1950 pursuant to stipulation of the parties.

Affirmed.

MR. JUSTICE KNUTSON took no part in the consideration or decision of this case.