## STATE v. NORTH ITASCA ELECTRIC CO-OPERATIVE, INC.

78 N. W. (2d) 54.

June 29, 1956—No. 36,786.

*Forrest T. Anderson,* for appellant.

*Miles Lord,* Attorney General, *George H. Gould,* Special Assistant Attorney General, and *Ben Grussendorf,* County Attorney, for respondent.

MURPHY, JUSTICE.

This action involves the tax classification of 34.3 miles of power line owned by the North Itasca Electric Co-operative, Inc. The trial court found the line in question to be transmission line rather than distribution line, and therefore subject to the ad valorem provisions of M. S. A. 273.42. From the judgment for the state, the cooperative association appeals.

The defendant is a cooperative association organized under the provisions of M. S. A. c. 308, engaging in the sale and distribution of electrical energy in northern Minnesota. It has no generating facilities of its own and obtains its power from the Minnesota Light & Power Company metering station at Deer River, Minnesota. The energy is carried in a general northerly direction over the association's lines at 22,000 volts to three substations in areas where its member consumers reside. These substations are located in Oteneagen Township; at Jessie Lake; and near the village of Bigfork. The line runs a total distance of 34.3 miles to these distribution points. While the association has a total of 685 miles of line serving more than 2,000 members, it is the 34.3 miles of line extending between the point where the energy is purchased and the substations that are in question. This line will be referred to as the 22,000-volt line.

At the three substations the voltage is reduced by transformers to 7,200 volts so that the power may be distributed to the consumers. This distribution is accomplished by means of under-builds or service lines which carry the lower voltage from the transformer stations to the yards of the consumers. Individual transformers further reduce this voltage to 110-220 at the ultimate point of delivery.

The trial court determined the 34.3 miles of 22,000-volt line to be subject to tax on an ad valorem basis as provided by § 273.42. The association points out that it is engaged solely in the sale of electrical energy to its members for their consumption; that the line in question is not within the corporate limits of any city or town; and that the 22,000-volt line is used as an integral part of its system in the distribution of electrical power to the ultimate consumer and is,

in fact, a "distribution line" from which its consumers are served. It argues that the 22,000-volt line is consequently subject to the commuted-tax provisions of § 273.41, which statute imposes upon cooperatives a 10-cent per capita tax for each member in lieu of all personal property taxes "upon distribution lines" located in rural areas.

We are asked to determine in this case whether the 22,000-volt line extending 34.3 miles from its energy source to its distribution substations is assessable on an ad valorem basis. As has been pointed out, § 273.41 imposes a per capita tax on the association in lieu of all state, county, and local personal property taxes upon the rural *distribution* lines of the association. On the other hand, §§ 273.37 and 273.42 provide that rural *transmission* lines of the association are to be assessed on an ad valorem basis.

In determining what the legislature meant by its use of the terms "distribution line" and "transmission line" in the applicable statutes, we are guided by § 645.08(1) which provides that, in construing statutes, words and phrases are to be understood according to their common and approved usage. Standafer v. First Nat. Bank, 236 Minn. 123, 52 N. W. (2d) 718; Welscher v. Myhre, 231 Minn. 33, 42 N. W. (2d) 311; Kugling v. Williamson, 231 Minn. 135, 139, 42 N. W. (2d) 534, 538.

The state Tax Commission construes transmission lines to be those lines which take the current from the point of delivery, whether it be a generating plant or a place of purchase, and deliver it in bulk to a point or points for distribution. The interpretation of the Tax Commission seems to be in accord with the common usage of the terms. It is significant that the association's manager in his testimony describes the system in terms consonant with the interpretation for which the state contends.[1] The dictionary definitions of the

---

[1] The manager referred to the substations as its distribution points. He referred to the line in question as a "feeder" to the distribution points. Following are random selections from his testimony in chief, the examination all being conducted by his own counsel:

"Q. Mr. Lake, how are those consumers served their electric power from this line?

two terms are in accord with the notion that transmission lines are those that transfer current from one place to another but do not divide or apportion it among the consumers, while the distribution lines are those engaged only in the latter function.

In State v. P. K. M. Elec. Co-op. Inc. 242 Minn. 404, 65 N. W. (2d) 871, in examining the tax commutation provisions of §§ 273.39 to 273.41, it was recognized that a distinction exists between transmission lines and distribution lines. In that case it was held that certain materials stockpiled for the future construction of a distribution line did not come within the meaning of "distribution lines and the attachments and appurtenances thereto" as used in § 273.41. The court stated (242 Minn. 411, 65 N. W. [2d] 876):

"Furthermore, it cannot be overlooked that rural *transmission* lines of a co-operative business, no matter where located, were not included in the class of property upon which the ad valorem tax was commuted. This accords with the legislature's nonaction in the legislative session of 1939 with respect to transmission lines owned by private operators. (L. 1939, c. 303 and c. 321.)"

---

"A. From the Oteneagen sub, our line, or distribution line is underbuild from this 22,000 volt line.

\* \* \* \* \*

"Q. Will you explain to the Court what is meant by an under-build?

"A. Under-build is construction or attaching distribution facilities on to another line, or building on other wires, where the poles serve as one pole set-up for the two lines.

\* \* \* \* \*

"Q. Now, Mr. Lake, proceeding from the Jessie Lake substation in a generally northerly direction, what is the next distribution point?

"A. That is the substation at Bigfork, approximately 16 miles from Jessie Lake.

\* \* \* \* \*

"Q. Mr. Lake, on cross examination you called this line in question here a feeder line. Now why did you call that a feeder line?

"A. Well, that is from our source of wholesale power. That feeds the voltage at a higher level to our distribution substation transformers.

"Q. That really is the line that feeds the system?

"A. That is right."

The distinction between the terms *transmission lines* and *distribution lines* as used in §§ 273.42 and 273.41 lies in the primary objective and purpose for which the line is used. It is apparent that the primary objective and purpose of the 22,000-volt line in question is the transfer of large quantities of electrical energy in bulk to locations from which it may be distributed or allocated to consumers by means of other lines. Accordingly we hold that the line in question is a transmission line subject to ad valorem tax under the provisions of § 273.37, subd. 2.

The need of the "exemption" in sparsely settled rural areas is strongly urged by the appellant-cooperative. We agree with the observation of the trial court that the legislature has thus far extended tax commutation benefits only to distribution lines and that it is for the legislature and not for the courts to enlarge that commutation.

Affirmed.